TORRES ET AL., DEMANDANTES Y APELADOS, *v.* RUBIANES ET AL., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Ponce en un caso sobre reivindicación de bienes hereditarios.

No. 977.—Resuelto en abril 28, 1914.

DERECHOS HEREDITARIOS—LEY VIGENTE AL FALLECIMIENTO DEL CAUSANTE.—Los derechos hereditarios tanto en la sucesión testada como en la intestada se rigen por la ley vigente al tiempo del fallecimiento del causante.

CÓDIGO CIVIL ESPAÑOL—FECHA EN QUE EMPEZÓ A REGIR EN PUERTO RÍCO.—De acuerdo con el Real Decreto de 31 de julio de 1889 el Código Civil Español empezó a regir en esta Isla a los 20 días de terminada su publicación en la Gaceta de la Isla, habiendo concluído dicha publicación el 12 de diciembre del mismo año.

TESTAMENTOS—REGLAS DE INTERPRETACIÓN.—Los testamentos deben interpretarse dando a las palabras del testador el sentido que tienen y procurando siempre dar efecto a sus distintas disposiciones.

ID. —  TESTAMENTO MANCOMUNADO ENTRE CÓNYUGES — INSTITUCIÓN MUTUA DE HEREDEROS—DERECHOS DEL CÓNYUGE SUPÉRSTITE PARA DISPONER DE LOS BIENES—HEREDEROS SUSTITUTOS DE AMBOS CÓNYUGES.—El testamento mancomunado en litigio, otorgado por ambos cónyuges contiene la siguiente cláusula: ''los señores testadores se instituyen y nombran mutuamente como únicos y universales herederos, el uno respecto del otro, de todos los bienes, derechos y acciones que dejare el primero de ellos que fallezca, para que los que sean, los herede, goce y disfrute libremente el que sobreviva, sin restricción ni limitación alguna. Y para cuando fallezca el último de los testadores que sobreviva, sea cual fuere de ellos, de todos los bienes, derechos y acciones que quedaren a su fallecimiento, instituyen y nombran por sus únicos y universales herederos en una tercera parte, de por mitad, a los hermanos del testador nombrados Doña Francisca y Don Pedro Pérez y García * * *, en otra tercera parte, también de por mitad, a Doña Margarita y Doña Felícita Molinas y Villá, hermanas de la testadora, y en la otra tercera parte, a la menor impúber Doña Ormesinda o Ermesinda Morales y Rubianes, de cuyas herencia disfrutarían libremente sin limitación alguna * * , *.''

*Se resolvió* que de acuerdo con dicha cláusula ambos cónyuges se nombraron mutuamente herederos en propiedad y no en usufructo de todos sus bienes, con facultad el conyuge sobreviviente de disponer libremente de los bienes del cónyuge premuerto, por actos entre vivos con la limitación, sin embargo, de que los bienes que dejara a su fallecimiento el cónyuge sobreviviente habían de pasar a los herederos sustitutos designados en dicha cláusula.

ID. — TESTAMENTO MANCOMUNADO ENTRE CÓNYUGES — INTERPRETACIÓN DE LAS PALABRAS "HEREDE, GOCE Y DISFRUTE"—HEREDERO USUFRUCTUARIO.—Examinada la cláusula transcrita del testamento en litigio se resolvió que las palabras "herede, goce y disfrute" no pueden ser interpretadas en el sentido de instituir al cónyuge supérstite solamente heredero usufructuario, ni que las palabras "libremente, sin restricción ni limitación alguna" se refieren a las restricciones impuestas a los herederos usufructuarios por el Código Civil.

ID.—INSTITUCIÓN DE HEREDERO A DÍA CIERTO—HEREDEROS CONDICIONALES.—De acuerdo con la Ley Octava, Título IV, partida 6ª., las instituciones de heredero a día cierto o que indudablemente ha de venir, por más que se ignore cuándo, como por ejemplo el fallecimiento de la persona, se equiparan a las instituciones puras, mientras que las instituciones de herederos sujetas a un evento de realización dudosa o incierta tienen el carácter de instituciones condicionales.

ID.—INSTITUCIÓN CONDICIONAL DE HEREDERO—TESTAMENTO MANCOMUNADO ENTRE CÓNYUGES.—Se resolvió que la cláusula transcrita .contiene una institución condicional de herederas a favor de Doña Margarita y Doña Felícita Molinas, causantes de los demandantes, dependiendo el que dichas causantes heredasen de 'dos sucesos, a saber, el fallecimiento del cónyuge sobreviviente y la existencia de bienes al tiempo de ese fallecimiento, siendo este último suceso el que le daba a la institución de dichas herederas el carácter de condicional, porque podía o nó suceder el que el cónyuge sobreviviente dejase o no bienes.

ID. — INSTITUCIÓN PURA DE HEREDEROS — INSTITUCIÓN CONDICIONAL DE HEREDEROS.—De acuerdo con la Ley Octava, Título IV, y la Ley 34, Título 9 de la partida 6ª., el efecto de la institución pura es la creación de derechos transmisibles a los herederos de los instituídos, desde el fallecimiento de los testadores, mientras que en las instituciones condicionales los herederos de los instituídos no adquieren derecho alguno hasta que se cumple la condición.

ID.—INSTITUCIÓN CONDICIONAL DE HEREDEROS—INCUMPLIMIENTO DE LA CONDICIÓN.—Los demandantes en este caso no adquirieron derecho hereditario alguno de sus causantes instituídas herederas condicionales, Doña Margarita y Doña Felícita Molinas, porque dichas causantes murieron antes de que se cumpliera la condición de que el cónyuge supérstite dejara bienes a su fallecimiento.

ID.—INSTITUCIÓN CONDICIONAL DE HEREDEROS—FALLECIMIENTO DE LOS HEREDEROS CONDICIONALES ANTES DE CUMPLIRSE LA CONDICIÓN.—La disposición testamentaria por la que un tercero es llamado al todo o parte de lo que reste de una herencia al morir el heredero, contiene una especie de sustitución condicional en favor del llamado, a la cual son aplicables las reglas y prescripciones legales que rigen a esta clase de instituciones, en las que es requisito indispensable que el instituído y el sustituto en su caso tengan capacidad legal para aceptar la herencia al cumplirse la condición impuesta por el testador.

DERECHOS HEREDITARIOS—FALLECIMIENTO DEL CAUSANTE ANTES DEL CÓDIGO CIVIL
ANTIGUO.—Según la regla 12 de las disposiciones transitorias del Código Civil
Español vigente anteriormente en Puerto Rico, los derechos a la herencia de
Doña Dolores Molinas y Villá, de la que derivan el suyo los demandantes,
deben regularse por la legislación anterior al citado código, sin que sea apli-
cable al presente caso el párrafo 2°. de la regla 1ª., ni por tanto el artículo
799 del Código Civil Español, por impedirlo, no sólo la regla 12ª., sino tam-
bién el artículo 3°. del mismo código.

Los hechos están expresados en la opinión.

Abogado de los apelados: *Sr. José A. Poventud.*

Abogado de los apelantes: *Sr. José Tous Soto.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinion del
tribunal.

Con fecha 15 de julio del año de 1911, Carmen, Julia y
Rafaela Torres y Molinas; Francisco Fernández y Molinas,
Enriqueta Fernández y Villá y Adela Aguilar y Fernández;
Rosa Eustasia, Juan y Petrona Puig Subirá y Molinas; y
Manuel, María Luisa, Ana Margarita y María Mercedes Ló-
pez Sagredo y Puig Subirá presentaron demanda enmendada
en la Corte de Distrito de Ponce contra Encarnación Rubia-
nes, Ormesinda y Francisca Dolores Morales y Rubianes, y
Felipe Gautier, en que alegan como hechos los siguientes:

1°. Que a los esposos Don Francisco Pérez García y Doña
Dolores Molinas y Villá pertenecía en pleno dominio a título
de gananciales desde el 19 de diciembre de 1865 por compra
que el esposo hiciera en escritura pública de esa fecha durante
su matrimonio, una finca urbana que se describe en dicha
demanda.

2°. Que en 24 de agosto de 1889 los consortes Pérez García
y Molinas Villá otorgaron testamento nuncupativo y manco-
munado ante el Notario de Ponce Don Joaquín Mayoral por
el que "se instituyeron y nombraron mutuamente como úni-
cos y universales herederos, el uno respecto del otro, de todos
los bienes, derechos y acciones que dejare el primero de ellos
que falleciera para que los que fuesen los heredara, gozara
y disfrutara libremente el que sobreviviera, sin restricción
ni limitación alguna. Y para cuando falleciera el último de

los testadores que sobreviviera, sea cual fuere de ellos, de todos los bienes, derechos y acciones que quedaran a su fallecimiento instituyeron y nombraron, por sus únicos y universales herederos, en una tercera parte, de por mitad, a los hermanos del testador, nombrados Doña Francisca y Don Pedro Pérez y García, residentes en Loja; en otra parte, también de por mitad, a Doña Margarita y Doña Felícita Molinas y Villá, hermanas de la testadora, y en la otra tercera parte a la menor impube Doña Ormesinda o Ermesinda Morales y Rubianes; de cuyas herencias disfrutarían libremente sin limitación alguna.''

3°. Que Doña Dolores Molinas y Villá falleció en Ponce el 7 de noviembre de 1889, desde cuya fecha el cónyuge supérstite empezó a disfrutar la finca urbana mencionada como único usufructuario de la misma, en virtud de la anterior disposición testamentaria, y estuvo disfrutándola hasta el 19 de junio de 1893 en que falleció, sin que por acto entre vivos hubiera dispuesto de ella en todo o en parte.

4°. Que Doña Felícita Molinas y Villá falleció en la misma ciudad de Ponce el 4 de mayo de 1891 bajo testamento otorgado en 18 de abril anterior por el que legó a sus sobrinas las demandantes Carmen, Julia y Rafaela Torres y Molinas por partes iguales la mitad de lo que pudiera haberle correspondido por herencia de su difunta hermana Doña Dolores Molinas y Villá en virtud del testamento nuncupativo y mancomunado que ésta otorgó, instituyendo y nombrando además Doña Felícita por sus únicos y universales herederos en cuanto a la otra mitad de dicha herencia y del remanente de sus bienes a su hijo Don Francisco Fernández Molinas, y a sus nietas Doña Enriqueta Fernández y Villá y Doña Adela Aguilar y Fernández por partes iguales; y la otra heredera instituída en el propio testamento mancomunado o sea Doña Margarita Molinas y Villá falleció también en Ponce el 2 de noviembre de 1892 sin disposición testamentaria, siendo sus herederos abintestato sus hijos los demandantes Doña Rosa Eustacia, Juan y Petrona Puig Subirá y

Molinas, y sus nietos Manuel, María Luisa, Ana Margarita y María Mercedes López Sagredo y Puig Subirá.

5°. Que Don Francisco Pérez García otorgó otro testamento en 5 de junio de 1893 por el que instituyó por sus únicos y universales herederos por partes iguales, de sus bienes, derechos y acciones, en propiedad, a las demandadas Ormesinda, casada con el co-demandado Felipe Gautier, y Francisca Dolores Morales y Rubianes, y en usufructo de por vida a la otra demandada Encarnación Rubianes, en virtud de cuyo testamento dichas tres demandadas después de fallecido el testador en 19 de junio de 1893 inscribieron a su nombre en el Registro de la Propiedad de Ponce en la forma expuesta, la totalidad de la finca urbana ya mencionada, con conocimiento de los derechos de los demandantes y de sus causantes en cuanto a la mitad indivisa que a éstos correspondía en la tercera parte de dicha finca, habiendo además poseído los cuatro demandados la repetida finca y disfrutado de sus rentas, productos, beneficios y utilidades, sin buena fe ni justo título en la parte correspondiente a los demandantes desde julio 1893 hasta la fecha de la presentación de la demanda.

6°. Que la indicada mitad de la tercera parte indivisa de dicho inmueble tiene un valor de $2,000, siendo de $3,180 el valor de las rentas, productos, beneficios y utilidades correspondientes a dicha participación durante el tiempo que los demandantes han estado privados de su posesión y goce.

7°. Que por razón de la detentación, los demandantes han sufrido además daños y perjuicios adicionales que estiman en $1,000.

8°. Que las tres primeras demandadas han cobrado después del fallecimiento de Don Francisco Pérez García y en virtud de su último testamento, a sabiendas de los derechos de los demandantes, la cantidad de $2,000 aproximadamente, importe parcial de una deuda de Don Félix Jorge, procedente de una venta de finca perteneciente a la sociedad de gananciales de los consortes Pérez García y Dolores Molinas y Villá, venta efectuada en vida de éstos, sin que Pérez García por

acto entre vivos hubiera dispuesto de la cantidad adeudada por Félix Jorge y de la que después de cobrada correspondía a los demandantes la mitad de la tercera parte de la misma.

La demanda concluye con la súplica de que se dicte sentencia en favor de los demandantes y en contra de los demandados, declarando:

1°. Que la mitad indivisa de la tercera parte de la finca urbana de que se trata pertenece a los demandantes en proporción al interés de cada cual y que en su consecuencia los demandados están obligados a poner dicha participación a la libre disposición de los demandantes, así como a entregar a éstos la mitad de la tercera parte del dinero cobrado a Don Félix Jorge.

2°. Que el testamento otorgado por Don Francisco Pérez García en 5 de junio de 1893 no tiene valor ni efecto legal alguno en cuanto respecta a los derechos de los demandantes sobre su condominio en la finca urbana y su participación en el dinero cobrado a Don Félix Jorge por los demandados, anulándose en su consecuencia la inscripción 2ª. que de la totalidad de la finca urbana practicaron a su favor las demandadas y de cualquier otra inscripción posterior a ella y ordenándose la cancelación de esas inscripciones en el registro de la propiedad.

3°. Que los demandados están obligados a pagar a los demandantes la suma de $3,180 por las rentas, productos, beneficios y utilidades de su condominio en la mitad de la tercera parte de la finca urbana en cuestión.

4°. Que los demandados están también obligados a satisfacer a los demandantes la cantidad de $1,000 en concepto de daños y perjuicios adicionales por la retención ilegal de su condominio, debiendo ser condenados además a pagar todas las costas, desembolsos y honorarios del pleito.

A la anterior demanda opusieron los demandados, las siguientes excepciones previas:

(a) La de indebida acumulación de acciones, a saber: la

de nulidad de institución de herederos, la real reivindicatoria de propiedad inmueble, y la personal para el cobro de dinero;

(*b*)  La de ser dudosa la demanda;

(*c*)  La de no aducir la misma hechos suficientes para determinar una causa de acción;

(*d*)  La de prescripción de las acciones ejercitadas;

(*e*)  Y la de indebida acumulación de partes demandadas, o sea la de haberse unido indebidamente a éstas Don Felipe Gautier.

Todas las excepciones mencionadas fueron declaradas sin lugar por resolución de 11 de octubre de 1911, y celebrado el juicio la Corte de Distrito de Ponce dictó sentencia en 29 de enero del pasado año 1913, por la que decide ''que los demandantes son dueños en pleno dominio de la sexta parte en común proindiviso de la finca urbana descrita en la demanda y en tal virtud declara nulo y sin ningún valor ni efecto el testamento otorgado en 5 de junio de 1893 por Don Francisco Pérez García ante el notario de Ponce Don Rafael León, y nula asimismo la inscripción que de la totalidad de dicho inmueble hicieron a su favor las demandadas Doña Encarnación Rubianes, Doña Ormesinda Morales y Rubianes y Doña Francisca Dolores Morales y Rubianes en cuanto uno y otra puedan afectar los derechos de los demandantes sobre el condominio que se les reconoce, ordenando además la corte que dichas demandadas y Don Felipe Gautier pongan el expresado condominio a la libre disposición de los demandantes, y condenando además a las demandadas Doña Encarnación, Doña Ormesinda y Doña Francisca a pagar a los demandantes la suma de $1,676, con las costas, desembolsos y honorarios del pleito.''

Contra esa sentencia interpuso la representación de la parte demandada, recurso de apelación para ante esta Corte Suprema, y entre otros motivos legales que invoca para sostener el recurso, alega el de que la corte inferior erró al estimar que las demandantes tienen causa de acción para reclamar bajo el testamento de los consortes Pérez-Molinas, la

herencia o parte de ella de Doña Dolorés Villá.   Si se ha cometido ese error, por ese solo fundamento procedería la revocación de la sentencia, y holgaría por tanto la consideración de los demás errores.

Para definir si los hechos expuestos en la demanda determinan una causa de acción, se hace preciso establecer ante todo cuál es la legislación que debe regular los derechos de los demandantes con relación a la herencia de Doña Dolores Molinas y Villá, si el Código Civil Español o los preceptos legales que anteriormente regían, que son los comprendidos en el Código de Partidas.

La regla duodécima de las disposiciones transitorias para la aplicación del Código Civil de 1889 dice así:

"Los derechos a la herencia del que hubiere fallecido con testamento o sin él antes de hallarse en vigor el código, se regirán por la legislación anterior.   La herencia de los fallecidos después, sea o nó con testamento, se adjudicará y repartirá con arreglo al código; pero cumpliendo, en cuanto éste lo permita, las disposiciones testamentarias.   Se respetarán por tanto las legítimas, las mejoras y los legados; pero reduciendo su cuantía si de otro modo no se pudiere dar a cada partícipe en la herencia lo que le corresponda según el código."

La regla duodécima transcrita, en su primer inciso no hizo otra cosa que hacer extensivo a los derechos hereditarios, por modo expreso, el primer inciso de la regla primera de las transitorias, según la cual habían de regirse por la legislación anterior al código los derechos nacidos, según ella, de hechos realizados bajo su régimen aunque el código los regule de otro modo o no los reconozca; y la misma regla 12ª. en su inciso segundo, teniendo en cuenta la regla 2ª. preceptiva de que los actos y contratos celebrados bajo el régimen de la legislación anterior y que fueran válidos con arreglo a ella surtirían todos sus efectos según la misma, con las limitaciones establecidas en las disposiciones transitorias, al ordenar que los derechos de los partícipes de la herencia de una persona fallecida después de estar vigente el Código

Civil, hubiera o nó testamento, se adjudicará y repartirá con arreglo a dicho código, previno se cumplieran en cuanto éste lo permitiera, las disposiciones testamentarias que hubiera. Y la razón de todo ello es obvia, pues en materia sucesoria, no hay derecho adquirido hasta la apertura de la sucesión, o sea hasta el fallecimiento del causante, y ese derecho, por tanto tiene que amoldarse a la ley entonces vigente.

Ahora bien, Doña Dolores Molinas y Villá falleció en 7 de noviembre de 1889, según se alega en la demanda, y en esa fecha el Código Civil no regía en Puerto Rico, pues en virtud de Real Decreto de 31 de julio de 1889 había de comenzar a regir en esta isla a los 20 días de terminarse su publicación en la *Gaceta* de la Isla, y como la publicación no concluyó hasta el día 12 de diciembre de 1889, resulta que empezó a regir después del fallecimiento de la Doña Dolores, y por tanto los derechos a la herencia de ésta deben regularse por la legislación anterior al citado código.

Como las demandantes en concepto de causahabientes de Doña Felícita y Doña Margarita Molinas y Villá no pueden reclamar sobre los bienes de que se trata derechos que no hubieran correspondido a éstas al fallecimiento de Don Francisco Pérez García, tócanos ahora examinar si Doña Felícita y Doña Margarita adquirieron con arreglo a la legislación expresada derechos hereditarios a virtud del testamento de los consortes Don Francisco Pérez García y Doña Dolores Molinas y Villá, al ocurrir el fallecimiento de Pérez García. La corte inferior sostiene la negativa y nosotros estamos conformes con ella.

Examinados los términos en que los esposos Don Francisco Pérez García y Doña Dolores Molinas y Villá hicieron la institución de heredero en su testamento mancomunado de 24 de agosto de 1889, según la alegación segunda de la demanda aceptada por la parte demandada y comprobada además documentalmente en el acto del juicio, salta desde luego a la vista que la institución **de heredero fué doble, a saber,** una de cada cónyuge a favor del otro, y la segunda de ambos

cónyuges a favor de las personas que nominalmente designaron. Por la primera institución *los cónyuges testadores se nombraron mutuamente únicos y universales herederos el uno respecto del otro de todos los bienes, derechos y acciones que dejare el primero de ellos que fallezca para que los que sean, los herede, goce y disfrute libremente el que sobreviva sin restricción ni limitación alguna.* Esa institución en la forma general y amplia en que se ha hecho, aisladamente considerada, otorga al cónyuge sobreviviente la facultad de gozar y disfrutar de los bienes del otro cónyuge de que llegue a ser heredero, libremente, sin restricción ni limitación alguna.

Empero como en el testamento los cónyuges testadores se impusieron recíprocamente una limitación respecto de los bienes, derechos y acciones que el uno heredara del otro, pues hicieron una segunda institución de herederos de todos los bienes, derechos y acciones que quedaran al fallecimiento del último cónyuge que sobreviviera, debemos armonizar ambas instituciones.

Dando a las palabras de los testadores, el sentido que tienen, y procurando siempre dar efecto a una y otra institución, según exigen las reglas de hermenéutica legal, surge la conclusión de que Don Francisco Pérez y Doña Dolores Molinas se nombraron mutuamente herederos de todos sus bienes con facultad amplia para disponer de ellos por actos entre vivos, bien entendido que los bienes que quedaran al fallecimiento del que sobreviviera procedentes del premortuo habían de pasar a los herederos designados en segundo lugar en el testamento. El supérstite podía disponer de los suyos tanto por actos entre vivos como por testamento.

Los testadores se nombraron mutuamente herederos de sus bienes en propiedad y no en usufructo, pues en el segundo caso, si tal hubiera sido su intención, los herederos designados en la segunda institución hubieran sido nombrados para todos los bienes que el cónyuge sobreviviente heredara del otro, y no de los que quedaran al fallecimiento del sobreviviente.

No podemos admitir la alegación hecha por la parte apelada de que las palabras de la institución de herederos "herede, goce y disfrute" se refieren a usufructo de los bienes, y las otras palabras "libremente sin restricción ni limitación alguna" a las restricciones que a todo usufructuario extestamento impone el Código Civil antiguo en sus artículos 467, 468, 491 y 498, cuales son la formación de inventario, prestación de fianza, responsabilidad por menoscabo en caso de arriendo, etc. Si aceptáramos tal interpretación forzaríamos abiertamente la letra de la cláusula testamentaria.

Ni cabe sostener que los testadores se nombraron mutuamente herederos fiduciarios con encargo y obligación de entregar a los herederos designados en segundo lugar el remanente de los bienes que dejara el último que falleciera, hechas las deducciones que el fiduciario podía legalmente hacer por gastos, réditos y mejoras, según el artículo 783 del Código Civil antiguo. Tal teoría está en abierta contradicción con el carácter de herederos propietarios de que se invistieron los testadores con facultad para disponer por actos entre vivos de los bienes heredados de su consorte, según dejamos establecido, y además repugna abiertamente al texto literal de la institución, en la que no hay palabra alguna que indique la existencia de un fideicomiso que debiera cumplir el cónyuge sobreviviente.

La primera institución fué además pura, pues no se supeditó a condición alguna suspensiva, de cuyo cumplimiento dependiera su realización.

En cuanto al carácter de la institución de herederas hecha a favor de Doña Felícita y Doña Margarita para cuando falleciera el último de los testadores que sobreviviera, en una tercera parte de por mitad de todos los bienes, derechos y acciones que quedaran a su fallecimiento, entendemos que dicha institución fué condicional, es decir, que fué sometida al cumplimiento de dos sucesos, a saber: uno, el fallecimiento del sobreviviente, y el otro, la existencia de bienes al tiempo de ese fallecimiento. La primera condición necesariamente había de venir por ser la muerte un acontecimiento necesario,

pero no la segunda, pues el cónyuge sobreviviente podía disponer de todos los bienes que quedaran al fallecimiento del otro, sin limitación ni restricción alguna, y de ahí que la existencia de bienes al fallecimiento del cónyuge supérstite no fuera un acontecimiento necesario.  Esa segunda condición es la que da el carácter de condicional a la institución de herederos de Doña Felícita y Doña Margarita, y no la primera, pues con arreglo a la Ley 8ª., Título IV, partida 6ª., interpretada por el Tribunal Supremo de España, las instituciones de herederos a día cierto o que indudablemente ha de venir, por más que se ignore cuándo, como el fallecimiento de la persona, se equiparan a las puras, lo que no sucede con las instituciones de herederos sujetas a un evento de realización dudosa e incierta.  Sentencias del Tribunal Supremo de España de abril 27, 1888, 63 Jur. Civ., 696;  de diciembre 21, 1888, 64 Jur. Civ., 867;  de julio 4, 1896, 80 Jur. Civ., 48; y de marzo 9, 1899, 86 Jur. Civ., 401.

El efecto de la institución pura es la creación de derechos transmisibles a los herederos de los instituídos, desde el fallecimiento de los testadores, mientras que en las instituciones propiamente condicionales los herederos no adquieren derecho alguno hasta que se cumple la condición.  Nos referimos a la ley aplicable al caso que como hemos dicho antes es la anterior al Código Civil Español, o sean la 8ª., título 4º., y la 34, título 9º., partida 6ª.

Haciendo aplicación de los principios que dejamos consignados, al presente caso, se hace forzoso concluir que habiendo fallecido Doña Dolores Molinas y Villá en 7 de noviembre de 1889 bajo el testamento mancomunado otorgado en 24 de agosto del mismo año, heredó sus bienes en propiedad su esposo Don Francisco Pérez sin más limitación que la establecida en el mismo testamento, respecto de los bienes que quedaran, y como Doña Margarita y Doña Felícita murieron antes que el Pérez, sin que se hubiera realizado el cumplimiento de la condición bajo la que fueron instituídas here-

deras, no adquirieron derecho alguno a los bienes de Doña
Dolores que quedaran al fallecimiento del Pérez.

En corroboración de que Don Francisco Pérez García no
fué heredero en usufructo sino en propiedad de su esposa
Doña Dolores Molinas y Villá, con facultad de disponer de
los bienes de la difunta, por actos entre vivos, podemos invo-
car la sentencia del Tribunal Supremo de España de 31 de
diciembre de 1872, 27 Jur. Civ., 166. Se trataba de un caso
en que los consortes Don Mateo Linares y su mujer Doña
Manuela Aubert, en testamento otorgado con fecha 11 de
noviembre de 1859, después de legar a Don Francisco Lina-
res quien vivía en su compañía, $200 que le serían entrega-
dos si por cualquier incidente se separaba de la compañía del
que de los testadores sobreviviera, se instituyeron recípro-
camente herederos el uno del otro en el remanente de todos
sus bienes, derechos, acciones y futuras sucesiones dispo-
niendo que por la muerte del último de ellos pasara todo lo
que conservasen al ya mencionado Don Francisco Linares.

Interpretando dicho tribunal la anterior institución de he-
redero, dejó consignado que al instituir Doña Manuela Aubert
único y universal heredero a su marido Don Mateo Linares
en el testamento que de mancomún con éste otorgó en 11 de
noviembre de 1859, lo hizo con palabras tan llanas, claras
y terminantes que no puede dudarse que su voluntad fué la
de autorizarle para que pudiera hacer uso de la plenitud de
las facultades que como a tal heredero único y universal le
confería, incluso la de disponer libremente durante su vida
de todos los bienes correspondientes a la testadora, pues
en otro caso habría empleado otra fórmula menos general y
absoluta designándolo con el nombre de heredero usufruc-
tuario o imponiéndole alguna otra limitación. Véase además
las sentencias del Tribunal Supremo de España de junio 21,
1872, 26 Jur. Civ., 16; y de noviembre 17, 1884, 56 Jur. Civ.,
470. Las del mismo tribunal de 7 de marzo de 1876, 33 Jur.
Civ., 441, y 22 de marzo de 1890, 67 Jur., Civ., 367, no son apli-
cables al caso.

Y en apoyo de que Doña Margarita y Doña Felícita fueron instituídas herederas condicionales y no adquirieron derecho alguno a los bienes de la testadora Doña Dolores, por haber fallecido aquéllas antes de que se cumpliera la condición bajo la cual fueron instituídas herederas en segundo lugar, podemos citar la sentencia del Tribunal Supremo de España de 10 de julio de 1878, 40 Jur. Civ., 184, en la cual se establece que según la jurisprudencia emitida por los tribunales, la dispocisión testamentaria por la que es llamado un tercero al todo o parte de lo que reste de una herencia al morir el heredero, contiene una especie de sustitución condicional en favor del llamado, a la cual son aplicables las reglas y prescripciones legales que rigen a esta clase de instituciones, en las que es requisito indispensable que el instituído y el sustituto en su caso tengan capacidad legal para aceptar la herencia al cumplirse la condición impuesta por el testador, y por consiguiente, el sustituto que muere pendiente dicha condición, no adquiere ni puede transmitir derecho alguno por testamento ni abintestato. Igual doctrina se establece en la de 15 de junio de 1868, 18 Jur. Civ., 30. Véase también las sentencias del Tribunal Supremo de España de 10 de diciembre, 1864, 10 Jur. Civ., 443; de febrero 6, 1865, 11 Jur. Civ., 130; de abril 24, 1867, 15 Jur. Civ., 396; de junio 27, 1867, 16 Jur. Civ., 57; de septiembre 28, 1867, 16 Jur. Civ., 184; y de enero 31, 1887, 61 Jur. Civ., 172. La sentencia de 4 de abril, 1866, 13 Jur. Civ., 399, no puede invocarse en contrario.

Los demandantes, legatarios unos y herederos otros, por testamento o abintestato, de Doña Margarita y Doña Felícita Molinas y Villá no pudieron adquirir de sus causantes el derecho que reclaman sobre bienes de Doña Dolores Molinas y Villá en virtud del testamento otorgado por ésta y su consorte Don Francisco Pérez García en 24 de agosto de 1889, pues la Doña Margarita y la Doña Felícita no llegaron a adquirirlo por haber fallecido antes del cumplimiento de la condición impuesta por Doña Dolores, y por tanto no pudie-

ron transmitirlo a sus herederos y legatarios por testamento o abintestato. *Nemo dat quod non habet.*

Estima el juez de la corte inferior en su sentencia, ser aplicable al presente caso el artículo 799 del Código Civil Español, en cumplimiento del inciso segundo de la regla primera de las dictadas para su aplicación, artículo y regla que transcribimos a continuación:

"Artículo 799.—La condición suspensiva no impide al heredero o legatorio adquirir sus respectivos derechos y transmitirlos a sus herederos, aun antes de que se verifique su cumplimiento.

"Regla 1ª. Se regirán por la legislación anterior al código los derechos nacidos según ella, de hechos realizados bajo su régimen, aunque el código los regule de otro modo o no los reconozca. *Pero si el derecho apareciere declarado por primera vez en el código, tendrá efecto desde luego, aunque el hecho que lo origine se verificare bajo la legislación anterior, siempre que no perjudique a otro derecho adquirido, de igual origen.*"

La regla 1ª. que dejamos transcrita no es de aplicación en su totalidad a los derechos hereditarios, pues éstos son objeto de una regla especial, o sea de la 12ª. también transcrita anteriormente, la cual en su primer inciso, como ya dijimos, se limita a hacer extensivo a los derechos a la herencia del fallecido con testamento o sin él antes de estar en vigor el código, el precepto que contiene el inciso primero de la regla primera. A haber querido el legislador que el inciso segundo de la regla 1ª. fuera aplicable a los casos de herencia del que hubiere fallecido con testamento o sin él antes de regir el Código Civil Español, lo hubiera ordenado expresamente en la regla 12ª. No lo hizo así, y por tanto debemos admitir como regla general, sin la excepción que contiene el inciso 2º. de la regla 1ª., que los derechos a la herencia del que hubiese fallecido con testamento o sin él antes de hallarse en vigor el código deben regirse por la legislación anterior.

Y tiene que ser así, pues según el artículo 657 del mismo código, los derechos a la sucesión de una persona se transmiten desde el momento de su muerte, y según el 661 los here-

deros suceden al difunto por el solo hecho de su muerte en todos sus derechos y obligaciones. La sucesión se abre a la muerte del testador o causante de la herencia, y esa fecha es la que ha de tenerse en cuenta para determinar los derechos sucesorios.

No es posible admitir que la disposición testamentaria de que derivan los demandantes su pretendido derecho y que con arreglo a la legislación anterior al Código Civil no llegó a tener vida ni eficacia legal, adquiriera por ministerio de dicho código, o sea, en virtud del artículo 799, una vida que antes no tenía. Excepción tan grande y contraria al precepto del artículo tercero del Código Civil antiguo, expresivo de que las leyes no tendrán efecto retroactivo, si no dispusieren lo contrario, es inadmisible por mera interpretación o deducción, y ha debido establecerse expresamente en el mismo artículo 799 dando a éste efecto retroactivo, si tal era la voluntad del legislador, y si es que dicho efecto cabía dentro de la disposición transitoria preceptiva de que las variaciones introducidas por el código que perjudiquen derechos adquiridos según la legislación anterior, no tendrán efecto retroactivo.

Pero es que según la misma excepción consignada en el inciso segundo de la regla primera, en virtud de la cual se pretende aplicar al caso presente el artículo 799 del Código Civil Español, ésta no es susceptible de aplicación, pues si Doña Felícita y Doña Margarita no llegaron a adquirir los derechos que a su favor se establecieron en el testamento de los consortes Doña Dolores Molinas y Villá, y Don Francisco Pérez García, alguien podría reclamarlos, y ese alguien podría ser perjudicado por el precepto del artículo 799 del Código Civil Español.

Entendiendo como entendemos que el artículo 799 del Código Civil antiguo no regula el presente caso, se hace innecesario discutir cómo podría armonizarse ese artículo con el texto del artículo 759, expresivo de que el heredero o legatario que muera antes de que la condición se cumpla, aunque

sobreviva al testador, no transmite derecho alguno a sus herederos.

En mérito de las razones expuestas, opinamos que a los demandantes, como causahabientes de Doña Felícita y Doña Margarita Molinas y Villá no les asiste acción alguna para reclamar derechos a la herencia de Doña Dolores Molinas y Villá derivados del testamento que ésta y su esposo Don Francisco Pérez García, otorgaron en 24 de agosto de 1889, cuya falta de acción se desprende de los hechos consignados en la demanda, y como todos los pronunciamientos que en ésta se solicitan parten del supuesto de la existencia de aquellos derechos, debe revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda en todos sus extremos, y absolviendo de ella a los demandados, sin especial condenación de costas.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.