GIJÓN, DEMANDANTE Y APELADO, *v.* SURILLO ET AL., DEMANDADOS Y APELANTES.

Apelación procedente de la Corte de Distrito de Humacao en pleito sobre nulidad de actos y otros extremos.

No. 2620.—Resuelto en noviembre 20, 1922.

HERENCIA—HIJO NATURAL RECONOCIDO.—Según el Código Civil Revisado un hijo natural reconocido tiene derecho a heredar, en representación de su madre natural, al padre legítimo de ésta, debiendo fijarse tal derecho de acuerdo

con la ley vigente al fallecimiento del causante de la herencia y no con arreglo a la vigente en la· fecha del nacimiento del hijo.

ID.—SENTENCIAS—PRONUNCIAMIENTOS COMPRENDIDOS DENTRO DE LO SOLICITADO.— En este caso el demandante reclamó derechos hereditarios provenientes de sus bisabuelos por línea materna, pero sólo logró probar el derecho de uno de sus bisabuelos que le fué reconocido por la corte. *Se resolvió:* què la corte no erró, por estar lo concedido comprendido dentro de lo reclamado en la demanda.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. F. González.*

Abogado del apelado: *Sr. A. Aponte, Jr.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

La sentencia apelada contiene los siguientes pronunciamientos:

"1. Que es nulo y sin ningún valor el expediente posesorio tramitado por el demandado Manuel Surillo Aponte, de la finca que se describe a continuación * * *. (Se describe).

"2. Que es también nula, y sin ningún valor ni efecto, la escritura de partición de bienes otorgada en Humacao, ante el notario Mà>nuel Tous Soto, en 18 de julio de 1909, por Manuel Surillo Aponte, Carmen Surillo García y Joaquín Gijón Surillo, de los bienes relictos al fallecimiento de Manuel María Surillo Cintrón y María del Rosario Aponte.

"3. Que la finca de 180 cuerdas, anteriormente descrita, es propiedad del demandante Alfredo Gijón Surillo y de los demandados Manuel Surillo Aponte, y Carmen Surillo García, en la proporción siguiente: una tercera parte para el demandado Manuel Surillo Aponte, otra tercera parte para Alfredo Gijón Surillo y Carmen Surillo García, como herederos de Pedro Surillo Díaz, y otra tercera parte, que perteneció a María del Carmen Surillo y Aponte, y que deberá distribuirse entre el propio demandado Manuel Surillo Aponte, quien recibirá una doble porción por ser un hermano germano, y Alfredo Gijón Surillo y Carmen Surillo García como herederos de dicho Pedro Surillo Díaz, quien debía recibir una porción sencilla y la que deben recibir hoy sus herederos.

"4. Que el demandado Manuel Surillo Aponte pague al demandante Alfredo Gijón Surillo, por concepto de rentas y frutos percibidos, la cantidad de dos mil dollars; más las costas de este pleito."

Hemos examinado cuidadosamente las alegaciones y las

pruebas y de ellas resulta que el 28 de enero de 1860 Manuel María Surillo y Cintrón y su padre Luis Francisco Surillo otorgaron una escritura de la venta que "ahora tiempo hiciera" el segundo al primero de una finca rústica situada en Guayanés, término municipal de Yabucoa. Parte de esa finca es la de ciento ochenta cuerdas reclamada en este pleito.

El comprador Manuel María Surillo era en 1860 viudo de Manuela Díaz con quien había casado en primeras nupcias. La señora Díaz murió en 1850 quedando del matrimonio un solo hijo nombrado Pedro Surillo y Díaz.

En el propio año de 1860, pero después del otorgamiento de la escritura, Manuel María Surillo casó en segundas nupcias con María del Rosario Aponte procreando dos hijos llamados María del Carmen y Manuel.

En la demanda se alegó y se intentó probar en el juicio que la finca de que se trata fué adquirida por Manuel María Surillo durante su primer matrimonio, pero estamos conformes con la conclusión a que llegara el juez sentenciador en cuanto a que lo único que puede concluirse fuera de duda es que se adquirió por Surillo con anterioridad a su matrimonio con María del Rosario Aponte.

En 1885 falleció Manuel María Surillo dejando como herederos a sus hijos Pedro, del primer matrimonio, y María del Carmen y Manuel, del segundo.

De los dos últimos hijos María del Carmen murió con anterioridad al 21 de diciembre de 1900 y Manuel vive y es el demandado que posee la finca en cuestión.

El otro hijo Pedro casó con Josefa Braulia García procreando dos hijas Carmen y Aurora. Carmen vive y figura como demandada en el pleito. Aurora murió el 21 de diciembre de 1900, dejando un hijo natural reconocido, el demandante Alfredo Gijón Surillo, que nació el 4 de febrero de 1899. Pedro Surillo Díaz falleció el 20 de diciembre de 1905.

Conocida la historia de la familia, tal como consta del "record," veamos lo ocurrido con la finca, de acuerdo tam-

bién con las constancias del record. No existiendo testamento, la finca adquirida por Manuel María Surillo en 1860, debió pasar a su muerte a sus tres hijos Pedro Surillo Díaz, María del Carmen Surillo Aponte y Manuel Surillo Aponte. ¿Pasó en realidad? No. El demandado Manuel Surillo Aponte se adueñó de ella y tramitó un expediente posesorio a su nombre en 1906 y la inscribió en el registro. Luego y como consecuencia de cierto pleito, se practicaron unas operaciones divisorias de los bienes relictos al fallecimiento de Manuel Surillo Cintrón y su esposa María del Rosario Aponte, haciéndose constar en ellas que la finca de que se trata fué adquirida durante el segundo matrimonio de Surillo, y consignándose en ellas además un convenio que textualmente dice: "Doña Carmen García Surillo por sí, y don Joaquín Gijón a nombre de su hijo Alfredo Gijón Surillo, se obligan a vender a don Manuel Surillo Aponte, por el precio de tasación la porción adjudicada al heredero don Pedro Surillo Díaz, una vez aprobadas estas operaciones, pudiendo solicitar a nombre del Sr. Gijón la correspondiente autorización judicial para la venta." Dichas operaciones se efectuaron en 1909, cuando el demandante Alfredo Gijón Surillo era menor, sin haberse obtenido la autorización judicial previa que exije la ley.

De los hechos anteriores surgen claras las conclusiones primera, segunda y tercera de la sentencia apelada. Sus pronunciamientos son justos. El expediente posesorio y las operaciones divisorias son nulos. El demandado Surillo Aponte no era dueño de la totalidad de la finca. La finca no perteneció a la sociedad de gananciales del segundo matrimonio. No se podía disponer de los bienes del menor en la forma que se intentó sin la previa autorización judicial. La distribución de las herencias de Manuel María Surillo, de María del Carmen Surillo y Aponte y de Pedro Surillo Díaz contenida en el tercer pronunciamiento, sigue las reglas fijadas por la ley.

En su alegato señala la parte apelante seis errores. Los tres primeros se refieren a la admisión de las pruebas, Los hemos examinado y a nuestro juicio no requieren una exposición y discusión por escrito de nuestra parte. Son manifiestamente improcedentes.

Por el cuarto error se sostiene que siendo el demandante un hijo natural reconocido, no tiene derecho a heredar en representación de su madre natural al padre legítimo de ésta.

Si la muerte del abuelo hubiera ocurrido bajo el imperio del Código Civil español, tendría razón el apelante. Desde 1912, en el caso de *Correa et al.* v. *Correa et al.*, 18 D. P. R. 117, esta corte estableció la siguiente doctrina:

"De acuerdo con las disposiciones del Código Civil español vigente en Puerto Rico en 1890, el hijo natural reconocido tampoco tiene derecho a heredar, en representación de su padre natural, al padre legítimo de su padre natural."

Pero el fallecimento del abuelo ocurrió aquí en 1905 cuando estaba en todo su vigor el Código Civil Revisado que disponía en sus artículos 905, 913 y 898, lo que sigue:

"Art. 905.—Los hijos legítimos o ilegítimos reconocidos y sus descendientes, suceden a los padres y demás ascendientes sin distinción de sexo ni edad, y aunque aquéllos procedan de distintos matrimonios."

"Art. 913.—Los hijos ilegítimos reconocidos y sus descendientes tendrán los mismos derechos hereditarios que los hijos legítimos y sus descendientes, en la forma dispuesta en los precedentes artículos, así para heredar por derecho propio como por derecho de representación.

"No obstante el hijo ilegítimo y sus descendientes no tienen derecho a suceder abintestato a los hijos y descendientes legítimos y parientes colaterales legítimos del padre o madre que los hayan reconocido, ni ellos al hijo ilegítimo y sus descendientes.

"Los padres con respecto al hijo ilegítimo reconocido y sus descendientes, tendrán los mismos derechos hereditarios que los padres legítimos en la herencia abintestato de sus hijos y descendientes legítimos."

"Art. 898.—Llámase derecho de representación el que tienen los

parientes de una persona para sucederle en todos los derechos que tendría si viviera o hubiera podido heredar.''

La cuestión no es nueva. Fué decidida por esta misma corte en el caso de *Ex parte Smith et al.,* 14 D. P. R. 664. En dicho caso se hizo un detenido estudio de la materia y se concluyó finalmente que ''con arreglo a las disposiciones de nuestro Código Civil Revisado vigente en julio 29, 1906, un nieto natural reconocido, tiene derecho a heredar por derecho de representación a su abuelo natural.''

Alega el apelante que no es la ley vigente a la fecha de la muerte de la persona a quien se hereda, sino la vigente cuando el nacimiento del hijo la que regula el derecho a heredar del hijo e invoca para sostener su alegación el caso de *Esterás* v. *Esterás,* 24 D. P. R. R. 440. El caso invocado no tiene el alcance que le atribuye el apelante.

El artículo 746, párrafo 1, del Código Civil Revisado, igual al 758 del Código Civil antiguo, dispone:

''Art. 746.—Para calificar la capacidad del heredero o legatario se atenderá al tiempo de la muerte de la persona de cuya sucesión se trate.''

En el propio caso de *Ex parte Smith et al.,* la corte se expresó así:

''Los derechos hereditarios de un nieto a heredar por derecho de representación a su abuelo paterno se regulan por las leyes vigentes al tiempo del fallecimiento de su abuelo, cuya herencia es la que va a distribuirse y no por las leyes vigentes al fallecer el padre.'' 14 D. P. R. 664.

Y en el también citado caso de *Correa et al.* v. *Correa et al.* el tribunal expuso:

''Para estudiar debidamente esta cuestión, es necesario fijar antes las fechas del fallecimiento de los abuelos, pues es un principio bien establecido que la ley o las leyes vigentes en tales fechas, son las que deben regular los derechos de los herederos.'' 18 D. P. R. 117, 120.

El quinto error levanta la misma cuestión que el primero. Sostiene el apelante que habiéndose alegado en la demanda que la finca en cuestión se adquirió por Manuel María Surillo durante su primer matrimonio y no habiéndose probado tal hecho, la demanda debió haber sido declarada sin lugar, careciendo la corte de facultad para declarar probado que la finca se adquirió por Surillo siendo viudo.

La escritura demuestra que la venta se había realizado con anterioridad a su otorgamiento. Se presentó un testigo para probar que estando casado Surillo con su primera esposa poseía ya la finca como dueño. Sin embargo, de esa prueba no aparece tan claramente como es necesario que la finca se adquiriera constante dicho primer matrimonio y el juez estuvo justificado en fijar como fecha de la adquisición la indiscutible de la escritura, en cuya fecha era viudo el adquirente. Con ello se redujo en extensión la reclamación del demandante, pero quedó en parte subsistente. Reclamó el demandante sus derechos hereditarios a una finca que alegó había pertenecido a sus bisabuelos por la línea materna y logró tan sólo demostrar sin duda alguna que la finca perteneció al bisabuelo. Lo concedido por la corte está comprendido dentro de lo reclamado en la demanda, siendo por tanto su pronunciamiento válido. Véase *Gandía* v. *Trias y Stubbe et al.,* 29 D. P. R. 676, 710.

Resta sólo examinar la cuestión relativa al cuarto pronunciamiento de la sentencia, levantada por el sexto y último señalamiento de error.

Se reclamaron veinte mil dólares por concepto de rentas y frutos percibidos. La corte concedió dos mil. Se trata de una finca de ciento ochenta cuerdas por lo menos que vale como mínimo a razón de cincuenta dólares la cuerda. Desde hace más de veinte años el demandado disfruta esa finca por sí solo. Considerables cuerdas de ella se dedicaron al cultivo de cañas en los mejores tiempos. La prueba demostró que terrenos de igual clase se arrendaban por un precio que

llegó a subir a ocho dólares mensuales por cuerda. Aun cuando se fijara en cincuenta centavos al mes el precio del arrendamiento, un simple cálculo aritmético daría por resultado una suma mayor que la concedida por la corte. Creemos que la suma redonda de dos mil dólares está sostenida por la prueba y por tanto que también es justo el último pronunciamiento.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Aldrey, Hutchison y Franco Soto.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.