ESTEL MARINA CANCEL CAPPA, demandante y apelante, *v.* BLANCA ROSA MARTÍNEZ y CARLOS RODRÍGUEZ VÁZQUEZ, demandados y apelados.

Número 10535.

*Sometido:* 26 de agosto de 1952. *Resuelto:* 24 de noviembre de 1952.

*Ramón G. Goyco* y *Rafael Atiles Moréu,* abogados de la apelante; *Luis A. Negrón López,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

El 21 de junio de 1949, y bajo el número Civil R–9786, Estel Marina Cappa radicó demanda de filiación ante la extinta Corte de Distrito de Ponce contra la sucesión de Julio E. Cancel Fernández, compuesta por dos primos hermanos de éste, llamados Victoria Cancel y Pedro Cancel, hijos de Lucas Cancel, tío legítimo de dicho Julio E. Cancel Fernández. No habiendo comparecido los demandados luego de haber sido debidamente emplazados, se anotó su rebeldía y celebrado el juicio, aquella corte dictó sentencia en 29 de julio de 1949, declarando que la demandante Estel Marina Cappa es hija natural reconocida de Julio E. Cancel Fernández. Obtenido así su reconocimiento como hija natural, Estel Marina Cappa bajo su nuevo nombre de Estel Marina Cancel Cappa, y en su carácter de única y universal heredera abintestato.de su padre Julio E. Cancel, instituyó en 2 de septiembre de 1949, ante la misma Corte de Distrito de Ponce, una acción que tituló "Petición de herencia y reclamación de frutos", contra los aquí demandados Blanca Rosa Martínez y su esposo Carlos Rodríguez Vázquez.[1] Después de alegar en esa demanda su carácter de única y universal heredera abintestato de su susodicho padre, quien falleció en 16 de abril de 1932, expuso en síntesis los siguientes hechos: Su padre Julio E. Cancel Fernández era hijo legítimo de los esposos José Ramón Cancel Torres y Leticia Fernández Rodríguez, conocida por Aleticia, y que al morir José Ramón Cancel Torres, su viuda Leticia casó en segundas nupcias con Ibo Martínez Nazario. Estos no procrearon hijos pero Ibo Martínez Nazario adoptó como hija suya a la aquí demandada Blanca Rosa Martínez quien está casada con el codemandado Carlos Rodríguez Vázquez. Falleció Leticia Fernández Rodríguez, en abril de 1926, dejando bie-

---

[1] Estos demandados trataron de intervenir en el pleito de filiación seguido por Estel Marina Cappa contra la Sucesión de Julio E. Cancel, pero la corte les negó permiso para ello.

nes muebles e inmuebles privativos suyos y otros pertenecientes a la sociedad de gananciales que tenía constituída con Ibo Martínez; continuó éste disfrutando todos dichos bienes y al ocurrir su muerte en febrero 5 de 1945, dichos bienes pasaron a poder de la demandada Blanca Rosa Martínez, quien fué declarada única y universal heredera de su padre adoptivo, Ibo Martínez, según resolución dictada por la propia Corte de Distrito de Ponce. A base de estos hechos la demandante Estel Marina Cancel Cappa solicita que se liquide la sociedad de gananciales habida entre Ibo Martínez Nazario y Leticia Fernández Rodríguez, su abuela natural, y suplica que se ordene a los demandados devolverle todos los bienes que le correspondan como heredera universal de Julio E. Cancel Fernández, su padre natural, hijo legítimo de dicha Leticia Fernández Rodríguez, con más los frutos y rentas percibidos de dichos bienes.

Los demandados radicaron una moción, basada en varios documentos públicos, solicitando que se dictara sentencia sumariamente a su favor. Dicha moción se funda en que "la demandante Estel Marina Cancel Cappa, carece en absoluto de toda causa de acción contra estos demandados", por las siguientes razones:

(A) Porque la sentencia dictada por la antigua Corte de Distrito de Ponce en la acción filiatoria núm. R–9786, declarando que Estel Marina Cappa es hija natural reconocida de Julio E. Cancel Fernández, es inexistente y nula, y constituye un fallo *Coram Non Judice,* por no haber adquirido jurisdicción dicha corte sobre las personas que legítimamente compusieran la sucesión intestada de Julio E. Cancel Fernández, toda vez que las únicas personas que en esa acción fueron partes demandadas, Victoria y Pedro Cancel, no tienen parentesco legal de clase alguna, ni nunca lo han tenido, con Julio Enrique Cancel Fernández, causante de la sucesión allí demandada y supuesto padre de Estel Marina Cappa; y

(B) Porque dicha sentencia de filiación fué dictada sin jurisdicción sobre la materia en litigio ya que de la faz de la demanda aparecía que la acción había prescrito.

La demandante radicó una extensa y argumentada oposición a la moción de sentencia sumaria, sin basarla en *affidavits* o documento de clase alguna. Los fundamentos de dicha oposición pueden, sin embargo, resumirse así: La sentencia de filiación a favor de la demandante fué dictada con jurisdicción sobre las partes y sobre la materia, constituye cosa juzgada y no puede ser atacada colateralmente, como pretenden hacerlo ahora los demandados; en consecuencia los documentos que se acompañan a la moción sobre sentencia sumaria son irrelevantes a la acción aquí ejercitada, e inadmisibles por ser evidencia extraña a la propia sentencia de filiación y al legajo (*judgment roll*). El escrito de oposición termina con la súplica de que "se desestime de plano la moción sobre sentencia sumaria".

Posteriormente la corte de distrito de Ponce declaró con lugar la moción de sentencia sumaria y en su consecuencia dictó sentencia declarando sin lugar la demanda. En dicha sentencia se analizan los documentos presentados en apoyo de la moción de los demandados, en la siguiente forma:

"Del Exhibit B resulta que Pedro Cancel y Ana María Torres, abuelos de Julio Enrique, se casaron en Lajas, el 11 de febrero de 1860;

"Del Exhibit G, que José Lucas Cancel Torres, hijo legítimo de Pedro Cancel y Ana María Torres, nació en Lajas, el 18 de noviembre de 1862; que era tío legítimo de Julio Enrique, quien de acuerdo con el Exhibit D, era hijo de Juan Ramón Cancel Torres, quien nació en Lajas en 16 de enero de 1871, hijo de los antes mencionados Pedro Cancel y Ana María Torres.

"Este Juan Ramón Cancel Torres era el padre legítimo de Julio Enrique Cancel Fernández.

"Del Exhibit D aparece que Juan Ramón Cancel Torres y Leticia Monserrate Fernández se casaron en Yauco el 30 de octubre de 1882.

"Del Exhibit F aparece que Julio Enrique Cancel Fernández nació en Yauco el 2 de mayo de 1888, hijo del matrimonio de Juan Ramón y Leticia.

"Por otro lado aparece del Exhibit G que Victoria Santiago, a quien se demandó con el nombre de Victoria Cancel, nació en

Yauco, el 6 de julio de 1892 y era hija natural de Monserrate Santiago en cuya acta de nacimiento no aparece haber sido reconocida o legitimada por su supuesto padre José Lucas Cancel Torres, quien también era conocido por Lucas Cancel.

"Pedro Juan Santiago, codemandado en el pleito de filiación con el nombre de Pedro Santiago, nació según el Exhibit H, en Yauco, el 5 de septiembre de 1897; era hijo natural también de Monserrate Santiago y tampoco aparece en su acta de nacimiento como reconocido y legitimado por su supuesto padre José Lucas Cancel Torres. Este José Lucas Cancel Torres, supuesto padre, como dejamos dicho, de Victoria y Pedro Santiago, demandados con el nombre de Victoria y Pedro Cancel, aparece falleciendo en estado de soltería en Yauco, el 23 de junio de 1917. A pesar de que ambos, José Lucas Cancel Torres y Monserrate Santiago, vivieron por muchos años en Yauco, no existe en el antiguo Registro Civil de aquella ciudad, inscripción alguna de matrimonio de los mencionados José Lucas Cancel Torres y Monserrate Santiago."

Vistos dichos documentos, el tribunal de distrito concluyó que al declarar con lugar la demanda de filiación "la antigua Corte de Distrito de Ponce carecía de jurisdicción sobre la parte demandada en el referido pleito y que, por lo tanto, la sentencia que pronunció fué . . . inexistente", ya que los allí demandados Victoria y Pedro Santiago [demandados como Victoria y Pedro Cancel] nunca fueron hijos reconocidos ni legitimados de Lucas Cancel y no podían, por ende, constituir la sucesión de Julio Enrique Cancel Fernández. Resolvió además el tribunal a quo, que visto el artículo 902 del Código Civil, ed. 1930, aun asumiendo que Victoria y Pedro Santiago fuesen hijos naturales reconocidos de Lucas Cancel, no podían ellos constituir la sucesión de Julio Enrique Cancel Fernández porque como tales hijos naturales no podían suceder abintestato a su primo hermano Julio Enrique, quien era un hijo legítimo. Finalmente concluyó el tribunal a quo que "no existe controversia real en cuanto a ningún hecho material", y dictó la sentencia que es motivo de este recurso de apelación.

La demandante-apelante imputa al tribunal a quo, la comisión de dos errores, a saber:

1º "Erró el tribunal al dictar sentencia sumaria sin vista, y sin que la cuestión le fuera en forma o modo alguno sometida a su consideración y resolución."

2º "Erró el tribunal al dictar sentencia sumaria, basada en hechos que no estaban en *issue* o controversia en la presente acción, y que ya habían sido resueltos en una acción de filiación, firme y ejecutoria, en la cual no fueron parte los demandados, ni eran partes afectadas o perjudicadas por dicha sentencia de filiación."

Discutiremos estos errores en orden inverso al de su señalamiento.

En realidad la cuestión fundamental planteada por el segundo error es la de si los aquí demandados-apelados pueden impugnar colateralmente, con evidencia extrínseca, la jurisdicción del tribunal sentenciador sobre la parte demandada en el caso de filiación R–9786. Si no pueden hacerlo, entonces la sentencia apelada no debe prevalecer porque ésta se funda precisamente en la inexistencia y nulidad de la sentencia de filiación. Por otro lado, si tal ataque colateral es permitido, la sentencia apelada debe sostenerse si de la evidencia extrínseca resulta que la susodicha sentencia de filiación fué dictada sin jurisdicción.

Una sentencia puede ser atacada colateralmente cuando la misma ha sido dictada sin jurisdicción, *Pérez* v. *Tribunal de Distrito*, 70 D.P.R. 656, aun por personas extrañas al pleito si éstas demostraren que tienen derechos, reclamaciones o intereses que serán perjudicados o afectados por el cumplimiento de la sentencia. *Ríos* v. *Román*, 71 D.P.R. 207. La evidencia extrínseca demuestra que los demandados en el pleito de filiación Victoria y Pedro Cancel no eran hijos reconocidos de Lucas Cancel, ni tenían relación alguna de parentesco con éste, por lo que dichos demandados nunca constituyeron la sucesión de Julio E. Cancel Fernández, que fué a quien se pretendió demandar en dicha acción. Más

aun, en el supuesto de que Victoria y Pedro Cancel hubiesen sido reconocidos por su padre putativo Lucas Cancel, tampoco eran herederos de Julio E. Cancel Fernández. Veamos por qué. Julio E. Cancel Fernández falleció en el año 1932. Para esa fecha el artículo 902 del Código Civil, ed. 1930, disponía en su párrafo 5 que "El hijo natural reconocido no tiene derecho a suceder abintestato a los hijos y parientes legítimos—con excepción de los abuelos y demás ascendientes—del padre o madre que lo haya reconocido, ni aquéllos al hijo natural reconocido." Siendo ello así, y comoquiera que los derechos sucesorios se regulan por las leyes vigentes al ocurrir el fallecimiento del causante, *Lucero et al.* v. *Los Herederos de Vilá*, 17 D.P.R. 152; *Correa et al.* v. *Correa et al.*, 18 D.P.R. 117; *Torres et al.* v. *Rubianes et al.*, 20 D.P.R. 337; *Esterás* v. *Esterás et al.*, 24 D.P.R. 440, es claro que Victoria y Pedro Cancel no podían constituir la Sucesión de Julio E. Cancel Fernández. En otras palabras, dichos Victoria y Pedro Cancel no tienen derecho a heredar a los parientes legítimos de su padre Lucas Cancel, quien, como ya hemos visto, era tío legítimo del causante Julio E. Cancel Fernández. *Ayala* v. *Sucrs. de Ortiz*, 34 D.P.R. 960 (*per curiam*); *Rijos* v. *Peña et al.*, 19 D.P.R. 147; *Rijos* v. *Folgueras et al.*, 19 D.P.R. 149; *Sucesión Pagán* v. *Pagán et al.*, 17 D.P.R. 145. Resulta, pues, que la demanda de filiación no fué dirigida contra la verdadera parte demandada, o sea, la sucesión de Julio E. Cancel Fernández, sino que fué dirigida contra dos personas extrañas, quienes no podían constituir tal sucesión. Repetidas veces ha declarado este Tribunal que para que una sucesión pueda ser demandada es necesario que se particularice e individualice la misma expresando los nombres de los miembros que la componen. *Fuentes* v. *Tribunal de Distrito*, 73 D.P.R. 959; *Sucn. Belaval* v. *Acosta*, 64 D.P.R. 109; *Viera* v. *Sucn. Goitía*, 55 D.P.R. 299; *Sucn. Rodríguez* v. *Comisión Industrial*, 53 D.P.R. 825; *Arvelo et al.* v. *Banco Ter. y Ag. de P. R.*, 25 D.P.R. 728. No

pudiendo Victoria y Pedro Cancel constituir la sucesión de Julio E. Cancel Fernández es claro que la corte no adquirió jurisdicción sobre aquéllos que debieron constituir la parte demandada. La referencia hecha en la demanda de filiación a la sucesión de Julio E. Cancel Fernández debe considerarse supérflua pues no se demandó a la sucesión en abstracto sino a dos alegados herederos que no eran tales. *Fuentes* v. *Tribunal de Distrito*, supra, escolio 4. No habiendo adquirido la corte jurisdicción sobre la verdadera parte demandada por no haber sido incluídos en la demanda, ni emplazados los verdaderos componentes de la Sucesión de Julio E. Cancel Fernández, *Cf. Rosas* v. *A. Bruno de Vázquez (Sucn.)*, 41 D.P.R. 143, la sentencia es nula. *Towner, Gobernador* v. *Corte de Distrito*, 39 D.P.R. 505; 1 Freeman, *On Judgments*, sección 339, pág. 683.

■ En las jurisdicciones americanas, de acuerdo con el peso de las autoridades, una sentencia de una corte de jurisdicción general no puede ser atacada colateralmente por falta de jurisdicción cuando dicha falta de jurisdicción no surge del propio récord o legajo y que no se puede presentar evidencia extrínseca para demostrar la falta de jurisdicción, 1 Freeman, *On Judgments*, sección 375, pág. 784; casos citados en 49 C.J.S. 823, escolios 31 y 32. Esto es así porque existe la presunción de que los récords de una corte de jurisdicción general son veraces, 1 Freeman, *ob. cit.*, sección 375. Mas esa presunción no es aplicable al caso de autos, pues también se sostiene que los extraños no están incluídos dentro de esa limitación y sí sólo las partes y sus causahabientes o sucesores en interés, y que los extraños pueden ofrecer evidencia para demostrar la ausencia de jurisdicción. 1 Freeman, *On Judgments*, sección 318, pág. 633; 1 Black, *On Judgments*, sección 260, citado en *Ferrell-Michael Abstract & Title Co.* v. *McCormac*, 184 S.W. 1081; *City of Fall River* v. *Riley*, 5 N.E. 481; *Turner* v. *Maury*, 224 S.W. 255. Ello es así porque no siendo los extraños partes en el pleito, no

podían atacar directamente la sentencia mediante intervención, apelación u otros medios directos. En el comentario *c* a la sección 93 del *Restatement of The Law of Judgments*, a la pág. 463, se resume la doctrina así:

"Los efectos legales de una sentencia nula son limitados en su alcance (véanse secciones 11–13). Tal sentencia no afecta al título, no confiere derechos al que la obtiene ni crea responsabilidades hacia aquél contra quien se obtuvo. Las terceras personas no tienen que reconocerla por más de lo que es. Así, cuando una persona descansa, para establecer su cadena de títulos, en una sentencia anterior, la otra parte en la acción puede evitar sus efectos probando que la sentencia era nula. Aún más, independientemente de si las partes en una sentencia están obligadas por el récord de tal manera que no pueden contradecirlo, *un extraño a una acción sobre la cual la corte no tenía jurisdicción debido a defectos en la citación, aunque el récord demuestre que la citación fué bien hecha, puede demostrar la ausencia de citación aun cuando al demandado en aquella acción no se le hubiere permitido hacerlo.*" (Bastardillas nuestras.)

Mucho más puede, pues, un extraño, como lo son los demandados en este caso, demostrar no ya un defecto en la citación sino que no hubo citación alguna de los verdaderos componentes de la sucesión demandada. El tribunal a quo actuó, pues, propiamente al considerar los documentos públicos presentádosle que demostraban la falta de jurisdicción y que demostraban, por ende, que la sentencia de filiación era nula.

 En el primer error se plantea un problema de derecho adjetivo. Arguyen los apelantes que la corte a quo dictó la sentencia sumaria sin vista y sin que la cuestión le fuera en forma o modo alguno sometida a su consideración y resolución.

Los autos revelan que la moción sobre sentencia sumaria tiene fecha de 17 de octubre de 1950 y que el día 23 del mismo mes y año los demandantes interpusieron su oposición a dicha moción solicitando que la misma fuera desestimada de plano. Cerca de seis meses después, o sea, en abril 18

de 1951, la corte a quo dictó la sentencia sumaria desestimando la demanda. Dice la propia corte en su referida sentencia, "La Moción sobre Sentencia Sumaria quedaba sometida por las partes para su resolución." Llama la atención el hecho de que al ser los demandantes notificados de dicha sentencia se limitaron a apelar de la misma inmediatamente para ante este Tribunal sin solicitar de aquella corte su reconsideración si era que en realidad deseaban presentar contraaffidavits o contradocumentos en apoyo de su oposición. Es en esta apelación que levantan por vez primera tal error de procedimiento. A pesar de ello tampoco han intentado demostrar a este Tribunal que están en condiciones de presentar en el tribunal a quo contraaffidavits o contradocumentos para impugnar los presentados por los demandados y demostrar así en definitiva que la sentencia de filiación fué dictada con jurisdicción sobre la parte demandada. Ellos han descansado más bien en las cuestiones de derecho que plantearon y argumentaron extensamente por escrito ante el tribunal a quo. Ese extenso escrito de oposición terminaba con la súplica de que "se desestime de plano la moción sobre sentencia sumaria." El tribunal a quo pudo entender, a nuestro juicio correctamente, que tal súplica implicaba que la susodicha moción de sentencia sumaria fuera resuelta sin más trámites. La palabra *plano*, tiene, entre otras acepciones, según el Diccionario de la Lengua Española, Décimoséptima Edición, las siguientes: 1. "Llano, liso, sin estorbos ni tropiezos; // De plano. 2. For. dícese de la resolución judicial adoptada sin trámites." La Enciclopedia Jurídica Española, Tomo 24, página 819, define en la misma forma tanto la palabra *plano* como la locución *de plano*. Dice así dicha enciclopedia: "Plano. Llano, liso, sin estorbo alguno. Se dicen de plano, las resoluciones dictadas sin trámites ni plazos dilatorios." Debemos establecer como una mejor práctica el no alterar o revocar la sentencia apelada a menos que nuestra negativa a tomar tal acción fuese inconsistente

con la justicia sustancial. Los apelantes no nos han demostrado que el error procesal señalado haya afectado sus derechos sustanciales por lo que en el supuesto de que el mismo se hubiera cometido no conllevaría la revocación de la sentencia apelada. Regla 61 de las de Enjuiciamiento Civil y 3 Moore's *Federal Practice*, sección 61.01, página 3285.

*Por las razones expuestas se confirma la sentencia apelada.*

El Juez Presidente Interino Señor Snyder no intervino.

