MERCEDES BERDECÍA, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. ANTONIO J. MATTA, JUEZ, demandado; ISABEL CARMEN SAURÍ TYRELL ET AL., interventores.

Número: C-62-21, Resuelto: 25 de enero de 1963

*Héctor Lugo Bougal* e *Inez Acevedo de Campos,* abogados de la peticionaria; *Carlos E. Colón, Lorenzo Lagarde Garcés,*

*Luis Negrón López, Benjamín Ortiz* y *Pablo Andino Espejo,* abogados de los interventores.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En su continua peregrinación judicial para obtener el pleno reconocimiento de sus derechos como hija de Félix Saurí Tyrell, recurre nuevamente Mercedes Saurí, née Berdecía, ante este Tribunal para que revisemos una resolución dictada por el Tribunal Superior, Sala de Ponce, cuyo efecto práctico es privarla de los derechos hereditarios inherentes a su condición de hija natural reconocida.

Los antecedentes de este recurso aparecen en la opinión emitida en *Berdecía* v. *Tyrell,* 82 D.P.R. 698 (1961). Basta recordar que la peticionaria nació en 3 de octubre de 1928 como fruto de las relaciones entre Dolores Berdecía y Félix Saurí Tyrell; que éste falleció intestado en 3 de diciembre de 1938; y que en 18 de agosto de 1952 se inició la acción de filiación que culminó con el reconocimiento mediante la sentencia que dictáramos en 23 de mayo de 1961, y que fuera confirmada sumariamente mediante orden dictada en 21 de junio de 1962 por el Tribunal de Apelaciones para el Primer Circuito en *Tyrell* v. *Berdecía,* No. 6016.

Además de la acción filiatoria, la demanda original aducía dos causas de acción sobre la nulidad de la institución de herederos contenida en el testamento de don Rafael Saurí Tristani —padre de Félix Saurí Tyrell, y por tanto, abuelo natural de la demandante— e inexistencia de contratos, cuya resolución se aplazó por las partes mediante estipulación escrita al efecto hasta que se resolviera en definitiva la acción principal sobre reconocimiento, ya que la capacidad de la parte actora para incoarlas dependía del hecho fundamental de su condición de hija natural reconocida. La demandante

había obtenido la anotación de la demanda al margen de la descripción de bienes inmuebles que forman parte del caudal relicto al fallecimiento de su abuelo natural de conformidad con el Art. 91 del Código de Enjuiciamiento Civil, ed. 1937, 32 L.P.R.A. sec. 455. (¹)  *Oliveras* v. *Registrador*, 51 D.P.R. 413 (1937); *Boerman* v. *Registrador,* 31 D.P.R. 732 (1923).

Estando aún pendiente el recurso de apelación interpuesto ante la Corte de Apelaciones para el Primer Circuito, y a pesar de que las partes habían estipulado no tomar acción alguna en relación con la segunda y la tercera causa de acción hasta que recayera sentencia final en cuanto a la filiación, los demandados presentaron una moción en 24 de julio de 1961 interesando se ordenara la cancelación de los avisos de demanda anotados como se ha expuesto.  Dicha moción se fundamentaba en la alegación de que la demandante no tenía causa de acción para impugnar la institución de herederos del testamento de su abuelo natural porque no era heredera forzosa de éste, invocándose la doctrina enunciada por este Tribunal en *Ex Parte Pérez Torres*, 53 D.P.R. 20 (1938). Por vía, poco usual, de esta moción, se planteó, pues, la suficiencia de la demanda.

Para tener un cuadro completo de los hechos que es necesario conocer a los fines de resolver, es preciso advertir que el señor Saurí Tristani falleció en 25 de enero de 1952 bajo testamento abierto otorgado en 26 de enero de 1949 en el cual instituyó como únicas herederas suyas a su hija legítima Isabel en los tercios de legítima estricta y de mejora, y a sus nietas legítimas Isabel Marie y Eugene Lois Nicole Saurí, hijas de la nombrada Isabel, en el tercio de libre disposición. Obsérvese que para la fecha del otorgamiento de las disposiciones de última voluntad, su hijo Félix le había premuerto,

(¹) El Art. 91 del Código de Enjuiciamiento Civil no fue derogado al aprobarse las Reglas de Enjuiciamiento Civil de 1958, Regla 72.

y su nieta natural Mercedes, no sólo no había logrado el reconocimiento, sino que aún no había iniciado su segunda acción que finalmente condujo al mismo.(2)

En una extensa resolución de fecha 12 de marzo de 1962, el tribunal de instancia accedió a las pretensiones de los demandados al sustentar que la demandante "no tiene derecho a herencia en los bienes de Rafael Saurí Tristani." Sus conclusiones pueden resumirse así: (a) la peticionaria no tenía derecho a heredar de acuerdo con la legislación vigente a la fecha de su nacimiento (1928) y a la del fallecimiento de su padre natural (1938), porque según resuelto en *Ex Parte Pérez Torres*, 53 D.P.R. 20 (1938), el nieto natural no podía heredar por derecho de representación en la sucesión *testada* de su abuelo natural; (b) las Leyes Núms. 446 y 447 de 14 de mayo de 1947, que enmendaron los Arts. 887 y 736 del Código Civil, ed. 1930, 31 L.P.R.A. secs. 2621, 2362 y que, el propio tribunal recurrido reconoce que tuvieron el efecto de "extender el derecho de representación del hijo natural reconocido a la sucesión testada para que no hubiera diferencia entre ambas sucesiones," no son aplicables para determinar el derecho a heredar de la peticionaria, pues ésta se rige por la legislación vigente a la fecha de su *nacimiento* y no por las disposiciones en vigor a la fecha de la muerte del causante o testador. Para sostener esta última afirmación se indica que la doctrina ratificada en *Cancel* v. *Martínez*, 74 D.P.R. 108 (1952)—"los derechos sucesorios se regulan por las leyes vigentes al ocurrir el fallecimiento del causante"—fue dejada sin efecto en *Márquez* v. *Avilés*, 79 D.P.R. 988 (1957).

■ 1. Tanto la legislación vigente a la fecha del nacimiento de la peticionaria—1928—como al fallecimiento de su padre natural—1938—y al fallecimiento de su abuelo natural—1952—determinaban entre los derechos de los hijos natu-

---

(2) La demandante inició una acción de filiación en vida de su presunto padre que terminó mediante sentencia de archivo por falta de instancia dictada en 30 de noviembre de 1938. Véase el escolio 5 de la opinión en *Berdecía* v. *Tyrell*, 82 D.P.R. 698 (1961).

rales reconocidos el de "percibir la porción hereditaria que determina este Código." Art. 195 del Código Civil, ed. 1902, según enmendado por la Ley de 9 de marzo de 1911 (Leyes, pág. 234). Estatutos Revisados 1911, sec. 3265; Art. 127 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 506. No cabe duda, pues, de que una vez obtenido el reconocimiento, el hijo natural tenía derecho a *heredar*, pero limitado a la porción hereditaria determinada por el propio código.

En cuanto al derecho de representación se refiere debemos distinguir dos períodos: 1) hasta el 14 de mayo de 1947 fecha de la aprobación de las Leyes Núms. 446 y 447, *supra*, el nieto natural reconocido podía heredar por derecho de representación a su abuelo natural en la *sucesión intestada*. *Ex parte Smith*, 14 D.P.R. 664 (1908); *Gijón* v. *Surillo*, 31 D.P.R. 199 (1922); pero no así en la sucesión testada, *Ex Parte Pérez Torres*, 53 D.P.R. 20 (1938), ratificado en la opinión inédita emitida por el malogrado Juez de Jesús en *Torres Laborde* v. *Torres Olivencia*, resuelto en 19 de diciembre de 1947; véase, Muñoz Morales, *Anotaciones al Código Civil de Puerto Rico, Libro Tercero* (1939), págs. 323–328; 2) a partir del 14 de mayo de 1947, y en virtud de las enmiendas introducidas a los Arts. 887([3]) y 736([4]) del Código Civil, el nieto natural hereda por derecho de representación a su abuelo natural, tanto en la sucesión intestada (véase, *Silva* v. *Doe*, 75 D.P.R. 209, 216 (escolio 7) (1953)) como en la testada, equiparándose así a la familia natural y a la legítima. Ello es así porque el Art. 736 específicamente determinó que "Son herederos forzosos [aquellos a quienes *el* testador no puede privar de su porción legítima]: 1. Los hijos y descendientes legítimos respecto de sus padres y ascen-

----

([3]) "Llámase derecho de representación el que tienen los parientes *legítimos o naturales legalmente reconocidos* de una persona para sucederle en todos los derechos que tendría si viviera o hubiera podido heredar."

([4]) "Son herederos forzosos: (1) Los hijos y descendientes legítimos respecto de sus padres y ascendientes legítimos, *y los hijos naturales legalmente reconocidos* respecto de sus padres *y ascendientes naturales o legítimos;* (2) . . ."

dientes legítimos, y *los hijos naturales legalmente reconocidos* respecto de sus padres y ascendientes naturales o legítimos." (⁵)

2. Sentados estos supuestos preliminares, el problema planteado en este recurso se reduce a determinar si los derechos hereditarios de Mercedes Saurí Berdecía en la *herencia testada* de su abuelo natural se rigen por la ley vigente a la fecha de su nacimiento, la del fallecimiento de su padre natural o la del fallecimiento de su abuelo natural.

*Ex Parte Pérez Torres*, 53 D.P.R. 20 (1938) dice, copiando del sumario, "Habiendo ocurrido la muerte de la testadora en 1934 su nieto natural o sea el hijo natural de su hijo legítimo, no tiene derecho *de acuerdo con la ley vigente en esa fecha* a heredarla en representación de su padre natural fallecido." Y en *Torres Laborde* v. *Torres Olivencia*, supra, en que igualmente se trataba de la sucesión de una testadora fallecida en 1945, se dijo en el único escolio de la opinión que "La ley que determina los derechos hereditarios no es la que regía en la fecha en que falleció *el supuesto representado* [el padre natural], sino la que imperaba al morir la causante [la abuela natural]." (⁶) En *Ex Parte Smith*, 14 D.P.R. 664 (1908) en que se trataba de una herencia intestada, se sostuvo igualmente que los derechos hereditarios de un nieto a heredar por derecho de representación a su

----

(⁵) Por considerarla de gran interés, unimos como apéndice A una copia de la opinión emitida por el Juez de Jesús en *Torres Laborde* v. *Torres Olivencia*. Llamamos la atención a la clara inferencia que se deduce del escolio 1 sobre el efecto de las Leyes 446 y 447 en cuanto al derecho de representación en la familia natural, y que el juez de instancia atinadamente expone así: "No abrigamos dudas, y esa es la interpretación que damos a las palabras del Honorable Angel R. de Jesús, que fue la intención legislativa al aprobar las leyes 446 y 447 . . . extender el derecho de representación a la sucesión testada para que no hubiera diferencia entre ambas sucesiones."

(⁶) En el caso de *Torres* unos hijos legítimos de la testadora impugnaron con éxito la institución testamentaria hecha por la abuela natural en el tercio de legítima rigurosa y en el de mejora a favor de un nieto natural, hijo natural reconocido de un hijo legítimo premuerto. El nieto natural invocó infructuosamente el derecho de representación para sostener la validez de la disposición testamentaria.

abuelo paterno se rigen por las leyes vigentes al tiempo del fallecimiento de su abuelo, *cuya herencia es la que va a distribuirse, y no por las leyes vigentes al fallecer el padre*. En el mismo sentido se pronuncia *Correa et al.* v. *Correa et al.*, 18 D.P.R. 117, 120 (1912). Finalmente, *Gijón* v. *Surillo et al.*, 31 D.P.R. 199 (1922) establece diáfanamente que un hijo natural reconocido tiene derecho a heredar en la sucesión intestada, en representación de su madre natural, al padre legítimo de ésta, debiendo fijarse tal derecho de acuerdo con la ley vigente al fallecimiento del causante, y no con arreglo a la vigente en la fecha del nacimiento del hijo.

Estas expresiones no son más que una aplicación específica de la doctrina invariablemente seguida y rigurosamente ratificada de que los derechos sucesorios se regulan por las leyes vigentes al ocurrir el fallecimiento del causante o testador, y que hemos aplicado uniformemente en *Lucero et al.* v. *Los Herederos de Vilá*, 17 D.P.R. 152 (1911); *Torres* v. *Rubianes*, 20 D.P.R. 337 (1914); *Velázquez* v. *De Choudens*, 29 D.P.R. 523, 525 (1921); *Febre* v. *Febre*, 40 D.P.R. 219 (1929); *Travieso* v. *Del Toro y Travieso, Int.*, 74 D.P.R. 1009 (1953);[7] *Cancel* v. *Martínez*, 74 D.P.R. 108 (1952); *Ab Intestato de Ana Garroti*, 79 D.P.R. 190 (1956); *Sucn. Rosario Andino* v. *Rosario Andino*, 85 D.P.R. 135 (1962).[8] Aun cuando interpretáramos el caso de *Esterás* v. *Esterás, et al.*, 24 D.P.R. 440 (1916), en la forma sugerida por el tribunal de instancia—a la legislación en vigor en la fecha del nacimiento del hijo es a la que debe acudirse para determinar los derechos que pueda tener a la herencia de su

---

(7) Expresamos a la pág. 1014: "La ley aplicable en cuanto a la efectividad jurídica de un testamento y en cuanto al *contenido*, alcance y extensión de los derechos hereditarios de los alegados causahabientes es aquélla que regía al tiempo del *fallecimiento del causante*, y no la ley que prevalecía al otorgarse el testamento."

(8) Corolario de esta doctrina es el principio de que "los derechos sustantivos envueltos en una partición hereditaria se determinan y rigen por las leyes vigentes al momento de fallecer el causante," y no las vigentes al hacerse la partición. *Cortés Córdova* v. *Cortés Rosario*, 86 D.P.R. 117 (1962).

padre—obtendríamos siempre el mismo resultado, pues la legislación vigente en 1928 en que nació Mercedes Saurí Berdecía le reconocía *el derecho a heredar* la porción hereditaria que determina el Código, y añadimos, según esta porción se establezca por la ley vigente a la fecha del fallecimiento de la persona de cuya sucesión se trate. En el caso de *Esterás* se trataba del "reconocimiento" de un hijo adulterino, que bajo la legislación vigente a la fecha de su nacimiento sólo tenía derecho a alimentos. Cfr. *Rossy* v. *Martínez*, 70 D.P.R. 737 (1949).

■ *Márquez* v. *Avilés*, 79 D.P.R. 988 (1957), conf. 252 F.2d 715 (1958), no tuvo el efecto de "descartar" la doctrina de *Cancel* v. *Martínez*, supra, y los numerosos casos ya citados. Se trataba de unos hijos adulterinos de acuerdo con la ley vigente a la fecha de su nacimiento. Como tales tenían derecho a alimentos únicamente, pero en virtud de la Sec. 2 de la Ley Núm. 229 de 12 de mayo de 1942, según enmendada, 31 L.P.R.A. sec. 502, se dispuso que se considerarían naturales al solo efecto adicional de llevar el apellido de sus padres. Claramente el reconocimiento con efectos limitados, no les confería el derecho a heredar. Cfr. *Abintestato de Clara Vélez, Ex parte*, 81 D.P.R. 653 (1960); *Alvarez* v. *Alvarez*, 77 D.P.R. 909 (1955); *Sánchez* v. *Díaz*, 78 D.P.R. 811 (1955); *Cortés* v. *Cortés*, 73 D.P.R. 693 (1952). En el presente caso la peticionaria, como hija natural reconocida de padres solteros, tenía el derecho a heredar, tanto bajo la ley vigente a la fecha de su nacimiento como a la del fallecimiento de su padre natural, el otorgamiento del testamento por su abuelo natural y el fallecimiento de éste; y esa era una de las consecuencias jurídicas de su filiación.

*Se anulará la resolución dictada por el Tribunal Superior, Sala de Ponce, en 12 de marzo de 1962, y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.* (9)

---

(9) Este litigio tiene diez años de tramitación, y es conveniente a todas las partes que se resuelva en forma definitiva a la brevedad posible.

## APENDICE A

GABRIEL TORRES LABORDE ET AL., demandantes y apelados, *v.* RAMÓN TORRES OLIVENCIA, menor de edad, ETC., demandado y apelante.

*Número:* 9515    *Resuelto:* 19 de diciembre de 1947

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del Tribunal.

Mercedes Laborde falleció en Ponce el 14 de marzo de 1945 bajo testamento otorgado el 12 de mayo de 1941. Declaró en su testamento que era viuda de Marcelino Torres, con quien había sido casada en únicas nupcias; que en su matrimonio tuvo los siguientes hijos: Mercedes, Carlos, Gabriel, Ramón, Isabel Luz, Concepción y Rafael; y que Ramón falleció dejando como su único y universal heredero a su hijo natural reconocido Ramón Torres Olivencia. Continuó declarando que instituía como sus únicos y universales herederos en cuanto al tercio de legítima rigurosa y por partes iguales, a sus hijos antes mencionados y que toda vez que su hijo Ramón falleció, instituía a Ramón Torres Olivencia en su representación como heredero de su parte en la legítima rigurosa. Dejó, además, a su citado nieto, todo el tercio de mejora y el de libre disposición.

Los herederos Gabriel, Luz Isabel y Rafael, sostienen que el testamento es nulo en tanto instituyó a Ramón Torres Olivencia heredero en los tercios de legítima rigurosa y mejora y en cuanto le reconoce derecho de representación como hijo natural de Ramón Torres Laborde.

Para obtener una interpretación judicial sobre las disposiciones testamentarias antes mencionadas, Gabriel, Luz Isabel y Rafael radicaron en la corte inferior este procedimiento sobre sentencia declaratoria.

El demandado interpuso una moción para desestimar la demanda por no alegar hechos constitutivos de causa de ac-

ción. La moción fue desestimada y no existiendo controversia en cuanto a los hechos y deseando el demandado descansar en los méritos de la moción para desestimar, solicitó sentencia por las alegaciones, la cual fué dictada declarando con lugar la demanda. El demandado invoca el derecho de representación para sostener la validez de la disposición testamentaria.

La cuestión levantada por el demandado fue resuelta adversamente a su contención en el caso de *Ex Parte Pérez Torres*, 53 D.P.R. 20. En el citado caso la testadora, abuela natural de los allí peticionarios, falleció el 28 de junio de 1934 bajo testamento otorgado el 20 de junio de 1921. Instituyó por sus únicos y universales herederos a sus legítimos hijos José, Fernando e Isabel Pérez Llera y Carmen Luisa Rucabado Llera, los tres primeros habidos en su primer matrimonio con Fernando Pérez y la última en las segundas nupcias contraídas con Mateo Rucabado. El heredero José Pérez Llera, padre natural de los allí peticionarios, falleció dos años antes que la testadora, dejando como sus únicos herederos a los peticionarios y a la abuela de éstos Isabel Llera Vázquez. Al morir ésta, los peticionarios solicitaron el nombramiento de un contador partidor para la herencia relicta por Isabel Llera Vázquez. Alegaron que eran herederos de ella en representación de su padre natural José Pérez Llera y que por consiguiente tenían derecho a intervenir en la partición de la herencia.

El albacea se opuso alegando por vía de excepción previa que la petición no aducía hechos y que los peticionarios no tenían derecho a intervenir en la partición por no ser herederos ni tener derecho alguno a la herencia de su abuela natural.

Considerando la cuestión así planteada, igual en principio a la que suscita el demandado en el presente caso, luego de analizar los preceptos legales aplicables a la jurisprudencia interpretativa de los mismos, resolvió este Tribunal que habiendo muerto la abuela bajo testamento y siendo los peti-

cionarios hijos naturales reconocidos, no tenían ellos derecho a la herencia por representación de su padre, ni eran herederos forzosos de su abuela.([1])

En la opinión de aquel caso se estudian las cuestiones planteadas en éste y no impugnándose su doctrina ni teniendo motivos para alterarla en el presente caso, debemos seguirla y consecuentemente confirmar la sentencia apelada.

([1]) La ley que determina los derechos hereditarios no es la que regía en la fecha en que falleció el supuesto representado, sino la que imperaba al morir la causante. *Ex Parte Pérez Torres*, supra, *Correa et al.* v. *Correa et al.*, 18 D.P.R. 117 y *Ex Parte Smith et al.*, 14 D.P.R. 664. Por consiguiente, no son aplicables al presente caso la Ley Núm. 13, aprobada el 29 de marzo de 1945 (pág. 39), ni las Núms. 446 y 447 de 14 de mayo de 1947 (pág. 945), toda vez que entraron en vigor con posterioridad a la muerte de Mercedes Laborde.