CARMEN DELIA SÁNCHEZ, en su carácter de madre con patria potestad sobre el menor RAFAEL EDGARDO SÁNCHEZ, demandante y apelada, *v.* TELESFORO DÍAZ MARRERO, demandado y apelante.

Número 11528.

*Sometido:* 8 de noviembre de 1955. *Resuelto:* 23 de noviembre de 1955.

*Manuel Cruz Horta,* abogado del apelante; *Oscar Castro Rivera,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El menor Rafael Edgardo Sánchez, representado por su madre con patria potestad, instó acción de filiación y alimen-

tos contra Telesforo Díaz Marrero ante el Tribunal Superior, Sala de Bayamón. La acción filiatoria está predicada en el concubinato y en la posesión continua de estado de hijo natural. El demandado negó todos los hechos esenciales de la demanda y luego de celebrarse un juicio en los méritos, la corte a quo dictó sentencia decretando que el demandante es hijo natural reconocido del demandado y condenando a éste a pasar a dicho menor una pensión alimenticia de $10 semanales más las costas y $100 para honorarios de abogado. No conforme con esta sentencia, el demandado apeló.

Es innecesario entrar a discutir todos los errores señalados por el apelante. Bastará, dada la conclusión a que llegaremos, resolver (1) si se probó el hecho de la paternidad; (2) si se probó el concubinato, y (3) si se probó la posesión continua de estado de hijo natural. Esto nos lleva irremediablemente a considerar la prueba que tuvo ante sí, y a la cual dió crédito, la corte a quo.

■■■ La única prueba presentada por el demandante consistió en el testimonio de su madre Carmen Delia Sánchez.

### Prueba de la Paternidad y el Concubinato

Declaró esta testigo que primeramente ella y el demandado se trataron como novios y llegaron luego a tener relaciones sexuales; que estas relaciones se extendieron desde agosto de 1950 y duraron casi hasta el 1953; que esas relaciones las llevaban en el carro y que el demandado la llevaba a veces a una casa y allí tenía relaciones maritales; que durante todo ese tiempo ella vivía con sus padres, siendo el demandado casado y ella soltera; que al tener relaciones con él, ella era señorita y con él perdió su virginidad y salió encinta; que el niño nació para agosto de 1951; que nunca tuvo relaciones con ningún otro hombre; que en ese tiempo no sabía donde era la casa personal del demandado, pero sí sabía donde era la oficina, a donde él la llevaba; que en distintos sitios el demandado la tenía en el carro todo el día; que nunca durmió toda la noche con él, viviendo ella en la casa

de ella y él en su casa; que él de día, por la mañana, se la llevaba por la carretera a sitios donde tenía facilidades para estar con ella y a la casa de él la llevaba y la tenía de día y de noche; que esta era una casa que él tenía alquilada en Bay View; que también la llevaba a una casa y a un hotel en Sabana Seca, y en todos esos sitios tenían relaciones sexuales; que él la llevaba a bailes, a todos los sitios, a los bailes en "Tres Palmas" y la "Cafetería Guzmán"; que al perder la virginidad con él no lo denunció porque él le propuso vivir con ella bajo techo y reconocerle la criatura si salía encinta y que al dar a luz ella pagó con sus economías, sus gastos en el Hospital de Distrito de Bayamón; que trabajaba como secretaria del demandado desde junio de 1950 a enero 4 de 1951; que durante todo ese tiempo el demandado no la alimentaba sino que le daba cinco o diez pesos cuando ella le pedía dinero.

### Prueba de la Posesión Continua de Estado de Hijo Natural

Además de lo declarado por la testigo sobre el hecho de la paternidad, declaró que su hijo ha vivido con ella toda la vida; "que en público lo ha tratado como hijo y delante de mí personalmente como hijo lo trataba"; que "nunca en la vida le ha dado un centavo"; que hubo relaciones de ella y su hijo con los familiares de él; que "todos los familiares de él, las hermanas se llevaban al niño, las sobrinas y la madre, ellos me le regalaban al niño cosas; que llevaba al niño a la casa de la hermana de él"; que ha requerido al demandado para que le pase alimentos a su hijo "y nunca me le ha querido dar un centavo".

La prueba reseñada ha dejado establecido el hecho de la paternidad. Basta para ello la sola declaración de la madre del demandante. *Pueblo* v. *Cáceres*, 65 D.P.R. 368; *Pueblo* v. *De Jesús*, 57 D.P.R. 708. La prueba sobre este extremo fué contradictoria pero la corte sentenciadora resolvió el conflicto en contra del demandado. Una vez establecida la pa-

ternidad, el demandante tiene derecho a recibir alimentos de su padre. *Vargas* v. *Jusino*, 71 D.P.R. 389; *Cerra* v. *Corte*, 67 D.P.R. 929; *Falcón* v. *Cruz*, 67 D.P.R. 530.

■ Ahora bien, no podemos convenir con la corte a quo en que quedó probado el concubinato entre el demandado y la madre del menor demandante. Repetidamente hemos dicho que el concubinato a que alude el inciso 3 del artículo 125 del Código Civil—31 L.P.R.A. sec. 504—se refiere a la condición de vivir juntos un hombre y una mujer como marido y mujer sin estar realmente casados. · *López* v. *Rodríguez*, 68 D.P.R. 756; *Bianchi* v. *Sucn. Bianchi*, 67 D.P.R. 594; *Montañez* v. *Rodríguez*, 67 D.P.R. 214. Esto no fué lo que dejó establecido la prueba de la demandante. Al resolver lo contrario, la corte a quo incurrió en error.

■ Por último consideraremos la prueba sobre la posesión continua de estado de hijo natural. Bien bajo la doctrina de "la prueba robusta y convincente"(¹) o bajo la doctrina de "la preponderancia de la evidencia",(²) la presentada por el demandante en este caso es insuficiente para justificar la posesión continua de estado de hijo natural. Dicha prueba es más débil que la considerada en el caso de *Figueroa* v. *Díaz, infra*. Fuera del hecho de la paternidad y de las manifestaciones de Carmen Delia al efecto de que todos los familiares del demandado se llevaban al niño y las hermanas y la madre le regalaban cosas al niño y que ella (la madre del demandante) llevaba al niño a casa de la hermana del demandado, no hay ninguna otra prueba de actos voluntarios de reconocimiento por parte del padre. La declaración de Carmen Delia al describir los actos directos de reconocimiento del padre no prueban hecho alguno. Las palabras "que en público lo ha tratado como hijo y delante de mí personalmente como hijo lo trataba", establecen una conclusión. No hay en el récord evidencia de actos específicos

---

(¹) *Santiago* v. *Martínez*, 72 D.P.R. 934; *Vargas* v. *Jusino*, 71 D.P.R. 389; *Ortiz* v. *Dragoni*, 59 D.P.R. 14; *Torres* v. *Sucn. Caballero*, 39 D.P.R. 724; *Méndez* v. *Martínez*, 21 D.P.R. 252, entre otros.

(²) *Figueroa* v. *Díaz*, 75 D.P.R. 163.

del demandado que puedan servir de base a tal conclusión. Por el contrario, la prueba del demandante revela que el demandado no proporcionó ayuda de clase alguna a la madre del niño para los gastos del parto, ni jamás le ha dado un centavo para su hijo.

Concluímos que la corte a quo incurrió igualmente en error al considerar que se había probado la posesión continua de estado de hijo natural.

■ En sus conclusiones de hecho y de derecho el tribunal sentenciador manifestó "Debemos añadir que cuando estas relaciones concubinarias existieron el demandado era casado con otra mujer, pero el fruto de las relaciones entre Carmen Delia y Telesforo no debe en forma alguna ser un valladar contra *el derecho que le da el nacimiento mismo a este niño y que se llama Rafael Edgardo Sánchez.* No podrá establecerse discrimen alguno por motivos de raza, color, sexo, nacimiento, origen o condiciones sociales ni ideas políticas o religiosas. (Constitución del Estado Libre Asociado de Puerto Rico, Artículo 2, Sección 1)." (Bastardillas nuestras.) Si se ha invocado la Constitución como fuente del derecho del demandante para disfrutar de los derechos que la legislación actual concede a los hijos, se ha cometido un error. Refiriéndose a la prohibición específica de discrimen por razón de nacimiento, el Informe de la Comisión de Carta de Derechos a la Convención Constituyente, sometido en 14 de diciembre de 1951, se expresa así:

"Se propone eliminar el estigma jurídico en contra de los hijos habidos fuera de matrimonio. Se coloca a todos los hijos respecto de sus padres y respecto del orden jurídico en igualdad de derechos. Las uniones ilícitas pueden y deben estar prohibidas y esta disposición tendrá como una de sus consecuencias el desalentarlas. Pero el fruto inocente de ellas, debe advenir al mundo libre de descalificaciones o de inferioridades jurídicas. Así lo exige el principio de la responsabilidad individual, con arreglo a la cual nadie es culpable por los actos que él mismo no realiza. Aunque la legislación actual ya cubre en casi su totalidad lo aquí dispuesto, será menester nueva legis-

lación. *A los fines de herencia y propiedades las modificaciones resultantes de esta sección no deberán ser retroactivas a nacimientos ocurridos antes de su vigencia.*" (Bastardillas nuestras.)

Para instrumentar este principio de igualdad de derechos de los hijos, se aprobó el 20 de agosto de 1952, la Ley núm. 17 "Para establecer la igualdad de derechos de los hijos", con efecto retroactivo al 25 de julio del mismo año 1952.

El demandante nació en 1951, o sea, con anterioridad a la implantación del nuevo estado de derecho. Su caso se rige por la legislación vigente a la fecha de su nacimiento. Bajo dicha legislación, y de acuerdo con los hechos específicos probados, no puede tener éxito su acción de filiación.

*La sentencia apelada será modificada en el sentido de que el menor demandante únicamente tiene derecho a recibir alimentos del demandado, y así modificada será confirmada.*

Los Jueces Asociados Sres. Negrón Fernández y Belaval disintieron.