ABINTESTATO DE CLARA VÉLEZ, Ex parte; MANUEL ACOSTA. VÉLEZ ET AL., peticionarios y recurrentes y JOSÉ VILLAMIL DÍAZ y otros, opositores y recurridos.

Número 12036.
*Sometido:* 3 de marzo de 1959. *Resuelto:* 28 de enero de 1960.

*José Sabater* y *Eudaldo Báez García*, abogados de los recurrentes; *E. Alcaraz Casablanca*, abogado de los opositores, recurridos; *Isaías Fuentes*, defensora judicial del menor Santiago Villamil y *Luis Ángel Limeres, Fiscal Auxiliar*, en representación del ausente Roberto Villamil.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

José Villamil Vélez, hijo legítimo de don Pedro Villamil y de doña Clara Vélez, falleció en Mayagüez, Puerto Rico, el día 14 de julio de 1938.

Por resolución de la antigua Corte de Distrito de Mayagüez, de fecha 20 de enero de 1939, fueron declarados únicos y universales herederos del finado don José Villamil Vélez, su madre doña Clara Vélez y sus cuatro hijos naturales reconocidos José Villamil, Santiago Villamil Valentín, José Rafael Villamil y Roberto Villamil. [1]

---

[1] El finado José Villamil Vélez había otorgado un testamento abierto en el cual instituía como sus únicos herederos, por partes iguales, a su

A solicitud de doña Clara Vélez se decretó la administración judicial de los bienes dejados por su hijo legítimo José Villamil Vélez, los que fueron valorados en unos $22,400.

Correspondió a doña Clara Vélez, como madre legítima del causante tres cuartas partes del caudal hereditario[2] y la otra cuarta la adquirió por compra a sus cuatro nietos naturales por precio de $2,000, que pagó a cada uno de ellos, pasando en esa forma doña Clara Vélez a ser la única dueña de todos los bienes relictos al óbito de su hijo legítimo José Villamil Vélez.

Unos catorce años después, o sea, en 20 de enero de 1952 falleció en la ciudad de Mayagüez doña Clara Vélez sin haber otorgado testamento. Por resolución de 17 de febrero de 1953 el Tribunal Superior, Sala de Mayagüez, declaró únicos y universales herederos de doña Clara Vélez a sus hijos Manuel Acosta Vélez y Carmen Vélez, también conocida como Carmen Acosta Vélez, y a sus nietos naturales José Villamil Díaz, Santiago Villamil Valentín, José Rafael Villamil y Roberto Villamil en representación de su hijo fallecido José Villamil Vélez.

Se decretó la administración judicial de los bienes dejados por doña Clara Vélez y dentro de dicho procedimiento se nombró un Contador Partidor, quien preparó y radicó un proyecto de Partición, dividiendo la herencia en tres partes, a saber: una tercera parte para el heredero Manuel Acosta Vélez; otra tercera parte para la heredera Carmen Acosta Vélez, por ser hijos de la causante, y la tercera parte restante entre los cuatro nietos naturales, José Villamil Díaz, José Rafael Villamil, Santiago Villamil Valentín y Roberto Villamil Carrero, por partes iguales para éstos.

---

señora madre doña Clara Vélez y a su hijo natural José Villamil. Sin embargo, se tramitó la declaratoria de herederos porque después de otorgado el testamento y después de la muerte del testador se reconocieron tres hijos naturales de dicho testador, llamados José Rafael, Roberto y Santiago Villamil.

[2] En este recurso no está en discusión la proporción de la cuota hereditaria que correspondió y se adjudicó a doña Clara Vélez.

Los herederos, José Villamil Díaz y José Rafael Villamil impugnaron el referido proyecto de Partición alegando que los bienes inmuebles que se hicieron formar parte de la herencia de doña Clara Vélez, y que fueron partidos entre todos los herederos de ésta, estaban sujetos a reserva a favor de los herederos que son hijos de José Villamil Vélez, toda vez que esos bienes los hubo la causante doña Clara Vélez por herencia de su dicho hijo José Villamil Vélez.

Después de declarar sin lugar la impugnación y de aprobar la partición en la forma preparada por el contador–partidor, el tribunal a quo, reconsideró su resolución, concedió una nueva vista a los opositores y finalmente dictó una resolución declarando con lugar la impugnación y ordenando al contador–partidor la preparación de un nuevo proyecto de partición. La parte dispositiva de dicha resolución lee:

"Por todo lo cual, el Tribunal declara con lugar la impugnación a la partición hecha por los peticionarios José Villamil Díaz y José Rafael Villamil, dejándose sin efecto la resolución que dictamos con fecha 27 de diciembre de 1955 aprobando el informe del contador partidor; declara los bienes habidos por doña Clara Vélez por herencia abintestato de su hijo José Villamil Vélez bienes sujetos a reserva a favor de los hijos de dicho José Villamil Vélez, y en su consecuencia, ordena al contador-partidor que proceda a realizar nueva partición a tenor con las siguientes instrucciones:

"Todos los bienes habidos por doña Clara Vélez Gordon por herencia de su hijo José Villamil Vélez deberán adjudicarse a los descendientes de éste, a saber, José Villamil Díaz, José Rafael Villamil, Santiago Villamil y Roberto Villamil, con excepción de aquella parte proporcional de esos bienes cuyo valor a la fecha en que se celebró la partición de los mismos al morir José Villamil Vélez fuese de alrededor de $8,000, que fue la suma que pagó doña Clara Vélez Gordon al resto de los herederos de José Villamil Vélez por la participación hereditaria de éstos." (T. A., págs. 79 y 80.)

Contra dicha resolución los herederos Manuel Acosta y Carmen Acosta, hijos de la causante doña Clara Vélez inter-

pusieron el presente recurso, señalando la comisión de los siguientes errores:

"I. El tribunal a quo cometió error al resolver que de acuerdo con el art. 924 del Código Civil los bienes heredados por la madre legítima doña Clara Vélez de su hijo José Villamil Vélez, eran reservables, no teniendo en cuenta ni la inexistencia ni la cesación ni la extinción de la reserva si hubiera existido.

"II. El tribunal a quo cometió error al resolver que la ascendiente doña Clara Vélez, estaba obligada a reservar, aunque no contrajera un segundo matrimonio, porque tuvo un hijo ilegítimo reconocido en estado de viudez.

"III. El tribunal a quo cometió error al resolver que los hijos naturales del hijo de su único matrimonio como reservatarios, tienen derecho a los bienes, alegados como reservables, excluyendo de la herencia de doña Clara Vélez a sus propios hijos.

"IV. El tribunal a quo cometió error al dejar de resolver que doña Clara Vélez como madre legítima de su hijo José Villamil Vélez, tenía derecho a heredar a su hijo que le premurió, con o sin testamento; y que tenía derecho y que podía adquirir mediante el pago en dinero efectivo, como lo hizo con aprobación del tribunal, los derechos hereditarios de sus nietos naturales, libre de toda obligación de reservar dichos bienes."

(Alegato de los apelantes, págs. 13 y 14, primera pieza.)

Al dictar la resolución que ahora revisamos el Juez del tribunal a quo se expresó así:

"En realidad el único problema que presenta este caso es si las disposiciones del art. 923 sólo establecen el derecho de reserva a favor de los hijos legítimos, o si por el contrario, las mismas también favorecen a los hijos naturales, como lo son los peticionarios en este caso. El artículo 923 establece el derecho de reserva a favor de los hijos y descendientes del primer matrimonio, que equivale según el artículo 924 a los hijos y descendientes del hijo legítimo del cual se heredan los bienes."

Convenimos en que esa es la cuestión fundamental envuelta en este caso.

Veamos ahora si el tribunal a quo resolvió correctamente al sostener el derecho de reserva a favor de los nietos naturales.

En apoyo de su tesis el tribunal a quo cita un comentario de Scaevola (17 Scaevola, Código Civil—Ed. 1900—pág. 160), donde dicho comentarista critica la institución de la reserva en tanto en cuanto la misma se establece a favor de la descendencia legítima y deja, por tanto, fuera de ella, a los hijos naturales.

Aceptando el razonamiento expuesto por Scaevola en su crítica, el Juez sentenciador concluye que ese criterio debe imperar en nuestra jurisdicción "especialmente si consideramos que actualmente los derechos de los hijos naturales en Puerto Rico se han apareado a los derechos de los hijos legítimos. Ambos son herederos forzosos de sus padres con iguales derechos hereditarios y no vemos razón lógica alguna que pueda servir de base para contender que entre los 'descendientes' que menciona el artículo 924 del Código Civil no están incluídos los hijos naturales reconocidos".

El art. 923 del Código Civil vigente (31 L.P.R.A., sec. 2731) dispone:

"El viudo o viuda que pase a segundo matrimonio estará obligado a reservar a los hijos y descendientes del primero la propiedad de todos los bienes que haya adquirido de su difunto consorte por testamento, por sucesión intestada, donación u otro cualquier título lucrativo; pero no su mitad de gananciales."

La disposición del anterior artículo es aplicable a los bienes que por los títulos en él expresados haya adquirido el viudo o viuda de cualquiera de los hijos de su primer matrimonio. Art. 924 del Código Civil (31 L.P.R.A., sec. 2732).

La viuda doña Clara Vélez, no pasó a segundo matrimonio pero es un hecho cierto que ella tuvo, en estado de viudez, hijos naturales reconocidos. Por lo tanto la obligación de reservar se la impone el artículo 935 del mismo Código (31 L.P.R.A., sec. 2743) que dispone:

"La obligación de reservar, impuesta en las anteriores secciones, será aplicable al viudo o viuda que, aunque no contraiga nuevo matrimonio, tenga en estado de viudez, un hijo ilegítimo reconocido o declarado judicialmente como tal hijo."

Pero para que exista la obligación de reservar impuesta al cónyuge bínubo y al viudo o viuda que tenga en estado de viudez un hijo ilegítimo reconocido, deben existir a la muerte del reservista aquellos reservatarios que el propio Código señala. El art. 923 establece la reserva a favor de los *hijos y descendientes del primer matrimonio*. Si fuéramos a interpretar este artículo aisladamente, podríamos concluir, como lo hizo el tribunal a quo, que al referirse el Código a los *hijos y descendientes*, sin cualificar la naturaleza de estos últimos, los hijos ilegítimos reconocidos, por ser *descendientes* de los hijos del primer matrimonio, estarían incluídos en los reservatarios; pero el art. 923 debe interpretarse conjuntamente con todo el articulado del Código que regula la materia de reserva. Así vemos que al establecer los casos en que cesa la obligación de reservar, el art. 925 [31 L.P.R.A., sec. 2733] dispone: "Cesará la obligación de reservar cuando *los hijos de un matrimonio*, mayores de edad, que tengan derecho a los bienes, renuncien expresamente a él, o cuando se trate de cosas dadas o dejadas por los hijos a su padre o a su madre, sabiendo que estaban segunda vez casados." (Bastardillas nuestras.) Este artículo menciona la renuncia hecha por los *hijos de un matrimonio*, lo que necesariamente implica que se refiere a la renuncia hecha por los hijos legítimos. Podría argumentarse que el artículo no hace referencia a los descendientes de los hijos de un matrimonio, esto es, a los descendientes de los hijos legítimos, pero el artículo siguiente, el 926 [31 L.P.R.A., sec. 2734] disipa cualquier duda en cuanto a la naturaleza de la descendencia a cuyo favor se establece la reserva. Dispone dicho artículo:

"Cesará además la reserva si al morir el padre o la madre que contrajo segundo matrimonio no existen *hijos* ni *descendientes legítimos* del primero." (Bastardillas nuestras.)

De acuerdo con este precepto si al morir el reservista no existen hijos ni descendientes legítimos del primer matrimonio, cesa la obligación de reservar. La razón es que en tal

caso no hay reservatarios porque éstos deben ser hijos legítimos del primer matrimonio o descendientes legítimos de dichos hijos.

Como José Villamil Vélez falleció en el 1938 dejando únicamente descendencia natural, al morir su señora madre doña Clara Vélez en enero de 1950, no existían hijos ni descendientes legítimos del primer matrimonio de doña Clara Vélez, y por tanto, de acuerdo con las disposiciones del citado artículo 926, cesó la obligación de reservar.

El Código faculta al padre o la madre, segunda vez casado, a mejorar en los bienes reservables a cualquiera de los *hijos o descendientes* del primer matrimonio. Art. 927 [31 L.P.R.A., sec. 2735]. Se observará que este artículo usa el mismo lenguaje que el art. 923 al referirse este último a la descendencia a cuyo favor se establece la obligación de reservar, o sea, a los *hijos y descendientes* del primer matrimonio. Sin embargo, el art. 928 [31 L.P.R.A., sec. 2737] que establece la regla para la sucesión en los bienes sujetos a reserva cuando el padre o la madre no hubiese usado en todo o en parte la facultad de mejorar a cualquiera de los hijos o descendientes del primer matrimonio, dispone que en tal caso, *"Los hijos y descendientes legítimos* del primer matrimonio sucederán en los bienes sujetos a reservas conforme a las reglas prescritas para la sucesión en la línea descendente, . . ."
Finalmente el art. 930 [31 L.P.R.A., sec. 2738] dispone:

> "La enajenación que de los bienes inmuebles sujetos a reserva hubiere hecho el viudo o la viuda después de contraer segundo matrimonio, subsistirá únicamente si a su muerte no quedan *hijos ni descendientes legítimos* del primero; sin perjuicio de lo dispuesto en la Ley Hipotecaria, Título 30." (Bastardillas nuestras.)

El lenguaje usado en el Código en todo el articulado que regula la institución de la reserva, no permite la interpretación del art. 923 en la forma que lo hizo el juez sentenciador. Nos parece que la cuestión ni siquiera es dudosa. Que el legislador quiso establecer la obligación de reservar a favor de

la descendencia legítima únicamente, resulta evidente del propio lenguaje usado en los artículos a que nos hemos venido refiriendo.

Los comentaristas de nuestro Código Civil y los del Código Civil Español sustentan el mismo criterio.

Scaevola, después de criticar a los redactores del Código Civil Español por no haber incluido a los hijos naturales entre los reservatarios, concluye: "No nos decidimos, sin embargo, a sostener la procedencia de la reserva en favor de los hijos naturales, dada la claridad con que se expresa el Código en todos los artículos de esta sección. Constantemente se hace referencia al *viudo* o *viuda*, constantemente también se trata de la reserva en favor de los hijos del primer *matrimonio*. Donde no hay matrimonio ni, por tanto, viudo o viuda, pueden llegar, y llegan seguramente los principios de derecho, las reglas de la sana crítica y el sentido común, pero no la necesaria fuerza de la ley. Ni siquiera podría pensarse en un error de expresión de los legisladores; el texto es claro, y concuerda, además, con la doctrina antigua seguida en este punto al pie de la letra; prueba terminante de que los redactores del Código sabían lo que se decían." (17 Scaevola, Código Civil, 5ª ed., pág. 189.)

Y refiriéndose a los nietos naturales Scaevola en la misma obra y tomo citado, comenta a la pág. 190, que el Código resuelve la cuestión con la terminante declaración que contiene el art. 971, equivalente al 926 nuestro. Dice dicho comentarista:

"Otra cuestión interesante pudo presentarse en el derecho antiguo, y hubiese podido mejor ser presentada en el del Código, si no se hubiera anticipado éste a resolverla con la terminante declaración que contiene el art. 971 acerca del carácter de legítimos que han de reunir los hijos y descendientes llamados a la reserva. Consiste esta cuestión en si el deber de reservar puede establecerse como favor del nieto natural, hijo natural de un hijo legítimo del primer matrimonio.

"El nieto natural es heredero forzoso de su padre. Si, pues, no puede negarse al nieto natural, a falta de otros títulos, interés

directo en que el patrimonio de su padre no sea disminuido, ¿por qué negarle el derecho definitivo a la propiedad de los bienes reservables? ¿Acaso la cualidad de hijo natural quita ni pone cosa alguna para representar al padre cuando se trata de hacer efectiva la obligación impuesta al abuelo por la ley a consecuencia de las segundas nupcias? ¿Ni qué motivo de los que sirven para conceder a los descendientes legítimos este derecho de representación faltará en el hijo natural? ¿Es la injuria dirigida contra el padre? No disminuye la injuria por la cualidad de natural del hijo. ¿Es el carácter de heredero forzoso? Lo tiene también el hijo natural. ¿Entra por algo la condición de descendiente del segundo matrimonio? Estos hechos concurren igualmente en el hijo natural que en el legítimo.

"Esta cuestión, no obstante, más aún que la tratada con anterioridad, ha sido resuelta en sentido desfavorable por el art. 971. Una vez más el legislador ha demostrado con esto su resistencia a la aceptación de los derechos de los hijos naturales, aun en lo que se impone como consecuencia lógica de principios y doctrinas que el Código no ha podido menos de reconocer y sancionar; y una vez más tenemos que dolernos por lo mismo de estas vacilaciones e inconsecuencias que tantas veces vamos teniendo necesidad de censurar en el Código." (17 Scaevola, Código Civil, 5a ed., págs. 190, 191.)

Manresa, comentando el desarrollo histórico de la institución de la reserva respecto a las personas a cuyo favor se estableció la obligación de reservar, menciona varias sentencias del Tribunal Supremo sobre la materia y concluye que la de 11 de marzo de 1861 que declaró que la obligación de las reservas se hallaba limitada por la ley 15 de Toro a los hijos, estaba ajustada a la ley y se hallaba perfectamente fundada y luego añade:

"Pero como esta doctrina, no obstante ser la más legal, no era por eso la más justa, los autores del Código Civil entendieron, con sobrada razón, que el fundamento y fin de las reservas exigían su establecimiento en favor de toda la línea recta descendente, y de aquí que el caso se halle hoy resuelto con toda claridad en los artículos 968, 971, 972 y 973, todos los cuales hablan expresamente de hijos y descendientes legítimos.

"Confirma esta doctrina la sentencia de 10 de junio de 1918, según la cual la reserva ordinaria, lo mismo que la troncal, vienen establecidas en favor de los parientes legítimos."[3]. (7 Manresa, Código Civil, (7a. ed.) pág. 303.)

Clemente de Diego, en su obra "Instituciones de Derecho Civil Español", tomo 3, págs. 385 y 386, se expresa así:

"B) Las personas en cuyo favor se establece la reserva son los hijos y descendientes del primer matrimonio. Las expresiones empleadas por el Código, 'viudo', 'viuda', 'hijos y descendientes del primero', 'hijos y descendientes legítimos del primer matrimonio' (arts. 968, 969, 970, 972), así como el espíritu íntimo inspirador del sistema del Código en la materia, convergen hacia la afirmación de que esos hijos y descendientes han de ser legítimos y comunes al cónyuge difunto y al supérstite obligado a reservar. La reserva es un beneficio de la común descendencia legítima de ambos.

"Materia de interpretación estricta, no cabe ampliar el beneficio de reserva a los hijos que no son comunes, ni a los naturales reconocidos, porque no son legítimos, ni a los hijos naturales de hijos legítimos fallecidos. (S. 10 de junio de 1918.)"

Valverde es del mismo criterio. "Según el Código,—se dice—"la reserva se halla establecida a favor de los hijos y descendientes del primer matrimonio . . . . Al disponer este artículo 968 que la reserva se establece a favor de los hijos del primer matrimonio, excluye a los naturales por ser estos hijos habidos fuera de matrimonio, y al extender la reserva a los descendientes legítimos de los hijos, excluye también a los nietos que sean hijos naturales de un hijo legítimo fallecido." (5 Valverde, Tratado de Derecho Civil Español, pág. 464.)

Sánchez Román se manifiesta en los siguientes términos:

"El reservatario o reservatarios a cuyo favor se establecen las reservas son indudablemente, después del Código, los hijos y descendientes legítimos y comunes del cónyuge premuerto y del

---

[3] La reserva troncal la establecía nuestro Código Civil de 1902 en su art. 799, equivalente al 811 del Código Civil de España, pero dicho artículo fue derogado por la Ley de marzo 8 de 1906, quedando vigente hoy únicamente la reserva establecida en los arts. 923 y 924. *Veray Molinary* v. *Marín*, 26 D.P.R. 208.

supérstite que por la celebración de nuevo matrimonio viene obli-gado a reservar. Las palabras 'viudo' y 'viuda', 'hijos y des-cendientes del primero', refiriéndose al matrimonio disuelto, que se emplean en los artículos 968, 969, 970 y 972, y las de 'hijos y descendientes legítimos del primer matrimonio', dejan fuera de toda duda que el Código sólo otorga el favor de la reserva a la descendencia legítima común del cónyuge difunto y del sobrevi-viente obligado a reservar." (Sánchez Román, Derecho Civil, Tomo 6, Volumen 3, pág. 1878, 2da. ed.)

Es innecesario adicionar el nombre de otros comentaristas que sostienen la misma tesis interpretativa del Código Civil de España al efecto de que la reserva se estableció a favor de la descendencia legítima. (¹)

Por su parte, don Luis Muñoz Morales (Anotaciones al Código Civil de Puerto Rico, Libro 3, pág. 375) sostiene que están excluídos del beneficio de reserva establecido en el art. 923, entre otros, "(b). Los hijos naturales de hijos legítimos de ese matrimonio pues el art. 926 (987 E.) declara que cesa la obligación de reservar cuando al morir el padre o la madre que contrajo segundo matrimonio no existan hijos ni descen-dientes legítimos del primero."

▮ ▮ ▮ A partir del 25 de julio de 1952, fecha de vigencia de la Constitución del Estado Libre Asociado de Puerto Rico, todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos. Véase la Sección 1 del Artículo II de la Cons-titución y la Ley núm. 17 de 20 de agosto de 1952. A partir pues, de dicha fecha, la cuestión que hemos venido examinando carece de importancia ya que no cabe la distinción entre la sucesión legítima y la natural. Sin embargo nos hemos visto obligados a examinar el punto porque el precepto constitucio-nal y la ley que equiparan los derechos del hijo ilegítimo con los del legítimo no son aplicables a los hechos de este caso. Cualquiera que sea la época que se tome para determinar los derechos de los nietos naturales, la misma sería siempre ante-

---

(¹) Véase, además 8 Colin y Capitant, Derecho Civil, pág. 576; 6 Mar-tínez Ruiz, Código Civil, págs. 264 y 268.

rior a la vigencia de la Constitución. Si consideramos (1) la fecha de nacimiento de los nietos naturales, (2) la fecha o fechas en que doña Clara tuvo en estado de viudez hijos naturales reconocidos, que es cuando nace la obligación de reservar, o (3) la fecha de la muerte de la reservista doña Clara Vélez (enero 20 de 1952) que es cuando ocurre la perfección y consumación del derecho de los reservatarios a la propiedad de los bienes reservables, son todas fechas anteriores a la vigencia de la Constitución.

Ya hemos resuelto que la declaración constitucional de la igualdad de los hijos ante la ley, tiene efectos prospectivos, y que no se pueden aplicar retroactivamente para ampliar los derechos hereditarios de personas nacidas antes de la vigencia de la Constitución. *Álvarez v. Álvarez*, 77 D.P.R. 909; *Sánchez v. Díaz*, 78 D.P.R. 811; *Márquez v. Avilés*, 79 D.P.R. 988; 252 F.2d 715.

Por lo tanto, los derechos de los nietos naturales en este caso se rigen por la legislación anterior, la que como hemos visto, no estableció a su favor la obligación de reservar.

*En mérito de lo expuesto se revocará la resolución dictada en 15 de marzo de 1956 por la Sala de Mayagüez del Tribunal Superior, en tanto en cuanto declara que los bienes habidos por doña Clara Vélez a título de herencia de su hijo José Villamil Vélez deberán adjudicarse sólo a los descendientes naturales reconocidos de éste, y se devolverá el caso para ulteriores procedimientos no incompatibles con esta opinión.*

---

Voto separado emitido por el Juez Asociado, Sr. Santana Becerra.

Al estar de acuerdo con la decisión emitida deseo hacer constar que por consideraciones que en el caso oportuno habré de exponer no suscribo del todo, con la expresión jurisprudencial que reafirma, el antepenúltimo párrafo de la opinión que reza:

"Ya hemos resuelto que la declaración constitucional de la igualdad de los hijos ante la ley, tiene efectos prospectivos, y que

no se pueden aplicar retroactivamente para ampliar los derechos hereditarios de personas nacidas antes de la vigencia de la Constitución. *Álvarez* v. *Álvarez,* 77 D.P.R. 909; *Sánchez* v. *Díaz,* 78 D.P.R. 811; *Márquez* v. *Avilés,* 79 D.P.R. 988; 252 F.2d 715."

en tanto ello implica que en todos los casos la declaración de igualdad de los hombres y por consiguiente de los hijos ante la ley así como la prohibición contra establecer discrimen alguno por motivo de nacimiento, contenidas en la Carta de Derechos de nuestra Constitución, son aplicables sólo a aquellos ciudadanos que nacieron con posterioridad al 25 de julio de 1952. En este caso está envuelto únicamente un derecho de propiedad de origen hereditario que tomó cuerpo al fallecimiento de la causante en 20 de enero de 1952, regido por la legislación vigente en dicha fecha, y no por la Ley 17 de 20 de agosto de 1952 efectiva desde el 25 de julio de dicho año. [1]

[1] "Todos los hijos tienen respecto a sus padres y a los bienes relictos por éstos, los mismos derechos que corresponden a los hijos legítimos."